Summers, J.
Gottlieb Bitzer by his last will, executed in 1894 and probated in 1904, devised and bequeathed to his widow such portion of his estate as she would be entitled to under the laws and statutes of Ohio, and subject to that *70 provision for her and the payment of his debts •and funeral expenses, he directed his executor •to convert all of his property into money and to. divide the same equally between his five children. Within the year the widow was duly cited to appear before .the probate judge and to make her election whether she would take the provisions made for her in the will, or be endowed with the lands of her deceased consort and take her distributive share of his personal estate. The widow appeared and failed to elect to take under the will. The executor had dower duly set off to the widow by metes and bounds and converted all of the real and personal estate into money, and upon settlement of his account in the probate court he was ordered to distribute, according to law, the balance found in his hands for distribution.
The widow contends, notwithstanding she has her dower in the real estate, that the proceeds of the sale of the real estate constitute a part of the personal property which is subject to distribution, and of which she is entitled to her distributive' share, and brought suit in the court of common pleas, under Section 6200, Revised Statutes, to recover such share.
The court of common pleas and the circuit court sustained her contention.
Section 5963, Revised Statutes, provides that a widow or widower shall not be entitled to both dower and the provisions of the will in her or his favor, unless it plainly appears by the will to have been the intention that the widow or widower should have such provision in addition *71 to the dower and such distributive share, and that if any provision be made for a widow of widower in the will of the deceased consort, the probate court shall issue a citation to such widow or widower to appear and elect whether to take such provision or to be endowed of the lands of the deceased consort and take the distributive share of the personal estate. Section 5964, Revised Statutes, provides that if the widow or widower fail "to make such election, the widow or widower shall retain the dower, and such share of the personal estate of the deceased consort as the widow or widower would be entitled to by law in case the deceased consort died intestate, leaving children. Section 4188, Revised Statutes, reads as follows: “A widow or widower who has not relinquished or been barred of the same, shall be endowed of an estate for life in one-third of all the real property of which the deceased consort was seized as an estate of inhéritance at-any time during the marriage, and in one-third of all the real property of which the deceased consort, at decease, held the fee simple in reversion or remainder; and also in one-third of all the title or interest that the deceased consort had, at decease, in any real property held by article, bond, or other evidence of claim; and the widow or widower may remain in the mansion house of the deceased consort, free of charge, for one year, if dower is not sooner assigned; but dower shall not be assigned .to any widow or widower in any real property of which the deceased consort, at decease, held the fee simple in reversion or remainder, until the termination of the - prior *72 estate.” Section 4176, Revised Statutes, provides' that when a person dies intestate and leaves any children or their legal representatives, the widow or widower shall be entitled to one-half of the first four hundred dollars and to one-third of the remainder of the personal property subject to distribution. Section 6038, Revised Statutes, provides for setting off to the widow certain articles of personal property, and where there is not sufficient personal property the appraiser shall certify what sum or further sum, in money, is necessary for the support of the widow or children
The amount for distribution as found by the circuit court is, received from personalty $784.79, and from realty $1560.72. If the husband had died intestate leaving children, the widow’s share would be in the $784.79 only, and would be one-half of the first four hundred dollars and .one-third of the remainder, amounting to $328.26, but the court g'ave her $848.50. The result proves that the process by which it was reached is erroneous. The judgment, it is contended, is supported by the doctrine of equitable conversion.
“Conversion has been briefly and accurately defined as 'that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible and descendible as such.’ ” 3 Pomeroy’s Eq. Juris., Section 1159.
“The effect of the conversion is a direct consequence of the principle in question. Personal estate becomes, to all intents and purposes, in the view of equity, real, and real estate personal. *73 Money directed to be invested in land descends to the heir of the original beneficiary, or passes under a general description of real property in his will, while land directed to be converted into money goes to his personal representatives, or is included in a residuary bequest of his ‘personal property.’ ” Pomeroy’s Eq. Juris., Section 371-See also Pomeroy’s Eq. Juris., Sections 1164 and 1165.
The doctrine is beautiful but it has no application to this case.
“The doctrine seems to be correctly formulated by saying that the effects extend only to those persons who claim or are entitled to the property under or through the instrument, or directly from or under the author of the instrument.” Pomeroy’s Eq. Juris., Section 1166. “For conversion, however, absolute in its terms, will be deemed to be a conversion for the purposes of the will only, unless the testator distinctly indicates an intention that it is, on the failure of those purposes, to prevail as between the persons on whom the law casts the real and personal property of an intestate, namely, the heir and next of kin.” 1 Jarman on Wills, 589.
The doctrine of equitable conversion is founded upon the maxim that equity regards and treats that as done which in good conscience ought to be done, and Mr. Pomeroy in Section 365 says that, “it should be observed that the principle involves the notion of an equitable obligation existing from some cause; of a present relation of equitable right and duty subsisting between two parties, — a right held by one party, from what *74 ever cause arising, that the other should do some act, and the corresponding duty, the ought resting upon the latter to do such act. Equity does not regard and treat as done what might be done, or what could be done, but only what ought to be done. Nor does the principle operate in favor of every person, no matter what may be his situation and relations, but only in favor of him who holds the equitable right to have the act performed, as against the one upon whom the duty of such performance has devolved.”
The widow can take only what the law gives her, or what her .husband gives her, unless it plainly appears by the' will that he intended the provision in his will for her to be in addition to what the law gives her. The statute provides that if she fails to take under the will she shall retain her dower and distributive share and if she elects to take under the will she shall be barred of dower and her distributive share and take under the will alone. The provision for her in this will is not in addition to her dower and distributive share, and she failed to elect to take under the will. There is no right in her to require the executor to convert the real estate into personal property and no ought upon him as to her. Her right to dower and a distributive share is paramount to the right of her husband to dispose of his estáte by will, and he can dispose of it only subject to her right, and in the present case he has expressly made it subject to her right. If she does not elect to take under the will, her right remains as it would be had he died intestate leaving children, as to her rights it is as if he had *75 died intestate. There is no will to work a conversion until she has received her dower and distributive share. She retains what the law gives her and the will disposes of what remains, and she having taken under the law can not claim any benefit under the will, and to claim the proceeds of the real estate as personalty is claiming under the will. The direction in the will to sell the real estate and to divide the proceeds does not transmute the real estate into money. “It physically remained real estate, taxable as such, controllable as such, and it could only be conveyed as such.” Earl, J., in Wilder v. Ranney et al., 95 N. Y., 7. “It was never personalty for any purpose of remedy unconnected with the conversion; and in the hands of the person dr persons who succeeded to it when Mrs. Chambers and. the child were dead, it would not be personalty but realty, and real, not personal, actions would be brought to determine the title. The question, therefore, in the ejectment'suit, or in any other suit involving the title, would not be whether the land had or had not at one time had the quality of personalty impressed upon it, and been _ transmitted as such under the statute of distributions; but the question would be to whom any manner it had been • transmitted, and who now, when unquestionably it is to be considered and dealt with according to its proper nature as realty, is entitled to the possession, enjoyment and control.” Cooley, J., in Shaw v. Chambers, 48 Mich., 355; Crowley v. Hicks et al., Exrs., 72 Wis., 539.
*76 In Cunningham’s Estate, 137 Pa. St., 621, the testator directed his real estate to be converted into personalty and to be distributed. The widow was not named in the will. She elected not to take under the will and claimed that the testator’s will effected a complete conversion of his' real estate into personalty, and that such conversion enured to her benefit and entitled her to one-half of the proceeds of the realty, absolutely. It was contended that the election made by the widow did not affect her right because the will made no provisions for her and left nothing for her to choose, that as to her her husband died intestate, having first stamped the character of personalty upon his entire estate and was bound to know its legal effect in determining the final disposition of his estate. In the opinion Mr. Chief Justice Mitchell says, “The election which the widow is required to make is between rights, not between benefits. She has the right to abide by her husband’s disposition of his property, or the right to override it and claim under the intestate law. These rights are inconsistent, and can not co-exist. She has always the choice which she will assert, but the choice is of one or the other, not both, and does not legally depend in any degree on the mention or- omission of her in the will, or on the quantum of benefits she receives or renounces under it.” And again, “Election, in the sense that applies to the present contention, means a choice between- two courses of action, acquiescence by the widow in her husband’s disposition of his property, or disregard of it and assertion of the rights the law gives *77 her. There is no third or mixed course. Her legal rights, which are paramount to the husband’s control, attach eo instanti that he dies, and there is no interval during which the will can slip in and work a conversion, and then stand aside to- let in her intestate rights upon the converted estate. Conversion takes place by virtue of the will, but as to the widow so electing there is no will. She must make her choice, and it is will or no will. She has time to consider which she shall take, but the quality of the estate as to her rights is fixed at the moment of death, and she must take one or the other as they were then. The law does not permit her to say there is a will for conversion, and no will as to her share.” To the same effect is Hoover v. Landis et al., 76 Pa. St., 354. In Barnett’s Admr. v. Barnett’s Admr., 1 Metcalfe (Ky.), 256, it is held that, “A widow, who' renounced her husband’s will under the act of 1797,. has no right to consider as personal estate lands which by the will were directed to be converted into money and paid over to the devisees.” In the opinion Chief Justice Simpson says: “Had the husband died intestate, the widow in this case would have been entitled to one moiety of his personal estate, inasmuch as he left no child. There does not seem to us to be any difficulty in determining what constitutes his personal estate. Only such estate as belonged to him, and had assumed the character of personal estate in his lifetime, can with any propriety be denominated his personal estate. The principle that land directed to be sold and turned into money, is to be considered as that species *78 or property into which it is directed to be converted, is fully established. Consequently the testator, by directing á sale of his land and slaves, and the payment of the proceeds to the devisees mentioned by him, impressed upon the property directed to be sold the character of money. But as his will did not take effect until after his death, that character was not impressed upon the property whilst it remained his. During the time it remained his property it consisted in lands and slaves; no conversion of it took place in his lifetime, and the conversion which was made by his will occurred after the property had passed from him, and at the time the right to it vested in his devisees. It never, therefore, constituted a part of his personal estate, and his widow had no right to it as being that kind of property.” Again he says: “But there is one principle of the doctrine of equitable conversion which demonstrates most conclusively that a widow, having renounced her husband's will, has no right to consider as personal estate lands which have been directed to be sold by the testator, and the proceeds paid over to the devisees Although a new character may have been in the most unequivocal terms impressed upon property by means of a trust for conversion, yet such constructive character is liable to be determined by the act of the persons beneficially entitled, who may, at any time before the conversion actually occurs, elect to take the property in its then condition. This right is wholly inconsistent with that claimed on behalf of the widow. For if the devisees, before a conversion of the lands, should elect to take the prop *79 erty in its actual instead of its destined state, a conversion would be thereby prevented, and the character of the property be changed from that impressed upon it by the testator to that which it actually possesses.” And again: “The widow was entitled to such share of her husband’s personal estate as she would have been entitled to had he died intestate; and in ascertaining that share, his estate is to be regarded and treated as if he had died intestate. Her interest in the estate can be neither increased nor diminished by any of the provisions of the will. It must be ascertained and determined as if there were no will in existence.” In Orrick v. Boehm, Trustee, 49 Md., 72-103, Bowie, J., says: “The principles which control the decision of this case, were most thoroughly discussed, and skilfully applied in the argument of Mr. Scott in the case of Ackroyd v. Smithson, before Lord Chancellor Thurlow, in 1780, and all the adjudications since made, have been more or less, the application of the same rules, to the' varying features of cases as they arose.
“Theories of construction have been built upon these decisions, which almost amount to arbitrary rules. Precedents have acquired the force of principles.
“It would be an herculean task,- to attempt to analyze and reconcile all the conflicting decisions in England and the United States. The briefs of the opposing counsel .show how numerous and various these decisions are, and how shadowy and subtle some of the distinctions.
“The basis of all the .decisions is, that the intent of the testator, is the great guide in deter *80 mining the question, whether there has been an equitable conversion of the realty into personalty.”' In Northrop v. Marquam, 16 Ore., 173-186, Strahan, J., says: “The several important questions of law presented by these findings I will now proceed to examine.
“1. The first question requiring notice is, what interest did Hettie Northrop have in the land in controversy? She was born after the making of her father’s will; she was not named or provided for in the will, and her father died about eight months before her birth. The findings of fact: bring the case fully within Section 3075 of Hill’s' Code, which is as follows: Tf any person shall make his last will and die, leaving a child or children, or the descendants of such child or children, in case of their death, not named or provided for in such will, although born after the making of such will or the death of the testator, every such testator so far as shall regard such child or children or their descendants not provided for shall-be deemed to die intestate, and such child or children or their descendants shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same-shall be assigned to them, and all the other heirs, devisees, and legatees shall refund their proportional part.’ As to Hettie’s interest in her father’s estate, he is deemed to have died intestate. While the will is valid and effectual as to all the children named or provided for therein, it is no will as to-those not named or provided for, and any such-child will take under the law of descent in all. respects as if no will had been made. Hettie,, *81 therefore, though in ventre sa mere at the time of her father’s death, took by inheritance one-fourth of all the real property of which he died seized in this state. And by her and her mother’s death the plaintiffs have succeeded to her interest.
“2. But counsel for respondent claim that conceding this to be true, the will conferred authority on the executors to sell the land; that Hettie’s interest was divested by the sale by the executors, and that she is compelled to accept her proportion of the proceeds of the sale-, and counsel claim that this principle applies to a child not named or provided for in the will. And to sustain this proposition they cite Hatch v. Bassett, 52 N. Y., 360; Power v. Cassidy, 79 N. Y., 613; 35 Am. Rep., 550; Wilson v. Wilson, 54 Mo., 213; Cronise v. Hardt, 47 Md., 433; Allen v. De Witt, 3 Com. B., 276; Phelps v. Pond, 23 N. Y., 69; Stagg v. Jackson, 1 Com. B., 206, and some other authorities not accessible to us. And they claim that this doctrine of equitable conversion applies to the interest of a child not named or provided for in the will; but none of the authorities cited sustains that doctrine as applied to a case of a child not named or provided for. By the terms of the statute thpre is no will as to such child; it is a case of intestacy, and to hold that the estate which comes tp him by inheritance in such case could be in any manner affected by the will would be in effect to disregard the plain provisions of the statute.” In McElroy v. McElroy et al., 110 Tenn., 137, it is decided: “Where a will contains a direction to sell lands, and makes provisions for the division of the proceeds among certain designated *82 parties, but does not name an executor or donee of the power to sell, an administrator with the will annexed has no authority to treat the estate as personalty under the doctrine of equitable conversion, and as such sell it. The doctrine of equitable conversion is not invoked for the purpose of affecting or controlling the mode by which one species of property is converted into the other, but principally to determine succession.” In James v. Hanks, 202 Ill., 114, it is held: “If a testatrix directs her lands to be sold for the particular purpose of paying certain gifts to legatees, the conversion does • not give to the proceeds the quality of personalty for the benefit of her husband, as her heir-at-law.” In Connell et al. v. Crosby, 210 Ill., 380, it is held, that the doctrine of equitable conversion is recognized in equity only, and is not given effect- in courts of law and that an inheritance tax upon funds derived from the sale of lands situated in foreign states cannot be collected in a suit at law upon the ground of equitable conversion by will. In the Matter of the Estate of Swift, 137 N. Y., 77, it was held that personal property of a resident decedent out of the state is subject to appraisal for the purpose of taxation under the collateral inheritance tax act, but that real property of the decedent situated out of the state is not subject to such appraisal and that the doctrine of equitable conversion cannot be invoked to subject it thereto. In Baptist Female University v. Borden, 132 N. Car., 476, it is held that, “Where a testator directs that certain real estate be sold and the proceeds be divided between two devisees, such sale constitutes a con *83 version for the purpose of division only and does not change the character of the property with respect to its liability for debts and legacies.”
If the direction to convert the real estate into personalty does not transmute it, and if under the doctrine of equitable conversion the real estate is only regarded as converted to give effect to the intention of the testator, then the conclusion must be the same in the case where no provision for the widow is made in the will, and the case of Hutchings v. Davis, Exr., 68 Ohio St., 160, was wrongly decided. It is true that in the case of Ferguson and Wife v. Stuart’s Ex’rs., 14 Ohio, 140, it is said in the opinion that, “The land named in the will was directed by the testator to be converted into money, which has been done. This changes the realty into personal estate.” But the property was not given to the widow under the statute of descents and distribution, but it is expressly found that she took the estate by the express direction of the will. Reed, J., in the opinion says: “The testator then declares, ‘it is my will that the money aforesaid go to my heirs.’ The law determines who are a man’s heirs, and this leaves that portion of the estate not specifically disposed of by the will, to the statute of descents and distribution, to designate the heirship precisely as though no will had been made. That act, under the circumstances alleged in the bill, declares .the wife an heir. The complainant, the widow of the testator, as legatee and heir, then takes the entire estate, by the express direction of the will, as well as by the operation of the act.” In Collier v. Collier’s Ex’rs., et al., 3 Ohio St., *84 369-374, Ranney, J., says: “In Ferguson v. Stuart’s Ex’rs., 14 Ohio, 140, it was held that land directed by will to be sold and converted into' money is treated as personal estate, and governed by the statutes of distribution as such; and by the 180th section of the administration law (Swan’s Statute, 389), the widow is entitled to the whole of the personal estate where the intestate has left no legitimate child. But it is unnecessary to' decide what might have been her rights in such case, as we are clear in the opinion that the will disposes of the whole,, and that there is nothing in the codicil to annul any of its dispositions.”
If it be contended that in that case the will made no provision for the wife, and that the statute provides for an election only when such provision is made, and that the widow not having been put to a statutory election and the testator having directed a conversion out and out, she may take her statutory share of the converted personal estate, the answer is that, she then would be put to an equitable election between dower and a distributive share, she could not treat the land as both real and personal property and take her dower estate in it as land and then a distributive share of it as personalty. But we do not wish to be understood as holding that in such case she might elect to take a distributive share of it as personal property. If the will makes no provision for her she takes only what the law gives her, and that is dower and a distributive share of the personal property as it exists independently- of the will. Doyle v. Doyle, Jr., et al., 50 Ohio St., 330. We can find no authority for the assumption that *85 a. direction in a will for an out and out conversion of all the property into personalty will effect a transmutation of the property and a devolution of it as personalty. The cases cited in the' opinion do not lend any support to such a conclusion. In Craig v. Leslie et al., 3 Wheaton, 563, the point decided was, that when the testator directed his lands to be sold and the proceeds to be given to his brother and the brother died without having elected to take the lands, the property passed to his personal representatives in the same manner as it would have done if the conversion had been made. In Given v. Hilton, 95 U. S., 591, Mr. Justice Strong, in the opening sentence of ‘ the opinion states, that the question is, what passed under the residuary clause of the testator’s will, and the conclusion is that as the testator had directed the complete conversion, to all intents, of his entire property into personal estate, the residuary bequest carried to the legatee not only that which was personalty at the testator’s death, but that which became personalty by the conversion he had ordered. And the opinion in the case of Harrington et al. v. Pier et al., 105 Wis., 485, so far as the effect of a conversion is involved, is sufficiently indicated by the third paragraph of the syllabus, which is as follows: “If, notwithstanding the failure of a purpose requiring a conversion of realty into personalty to satisfy it, the intention is manifest to accomplish a distribution of the estate in the form of money, that intent will accomplish the conversion of the realty into personalty in equity; and unless otherwise clearly indicated a void bequest will fall.into the residuum and go, to the residuary legatee if there be such.”
*86 In the great Argument of Lord Eldon, then Mr. Scott, in the case of Ackroyd v. Smithson, 1 Bro. C. C., 503, already referred to, he says, “The law says, where there is a residuary legatee, the testator shall be presumed to mean that he should take whatever lapses, either by the death of the legatees, or whatever is not given according to law. So long as there is any person to take, who is declared by the testator to be preferred by him to those whom the law appoints to succeed him, the heir can have no claim. If the testator spoke for himself he would say, If my special - intention of kindness to the charity fails, my general intention of bounty to - my residuary legatee shall take place; but where the residuary legatee is removed, there is nothing like a declaration by the testator in favour of the next of kin, to entitle them to succeed the residuary legatees, as there is where there is a general residuary clause in a will in favour of the persons named in it, to succeed the particular legatees; and to money arising by the sale of land, there can be no claim in the next of his kin but what arises from the declaration of the testator;, for unless he directs or expresses that it shall be considered as personalty, the heir must take it. We admit the heir, then, to be excluded whilst there are any persons ■ who can take the produce of the real estate under the will —the declaration of the testator’s intention: we deny that he is excluded by any who make their claim not under the will, but in defect of the will: or that the intention in the will can affect those who claim, upon the ground that there is no will which relates to the subject.” In 2 Leading Cases *87 in Equity, 1184, it is said: “Mr. Cox, in a note to Cruse v. Barley, 3 P. Wms., 22, which has been highly commended by many eminent equity judges, states his opinion, that' the several cases on this subject seemed to depend upon this .question — whether the testator meant to give to the produce of the real estate the quality of personalty to all intents, or only so far as respected the particular purposes of the will: for that unless the testator has sufficiently declared his intention, not only that the realty shall be converted into personalty for the purposes of the will, but further, that the produce of the real estate shall be taken as personalty, whether such purposes take effect or not, so much of the real estate, or the produce thereof, as is not effectually disposed of by the will at the time of the testator’s death (whether from the silence or inefficacy of the will itself, or from subsequent lapse), will result to the heir.” And the learned authors approve of what is said respecting this by Mr. Jarman, stating that what he says seems to be fully warranted by the authorities. What he says is that this statement requires the following explanatory addition: “But that every conversion, however absolute in its terms, will be deemed to be a conversion for the purposes of the will only, unless the testator distinctly indicates an intention that it is, on the failure of those purposes, to prevail as between the persons on whom the law casts the real and personal property of an intestate, namely, the heir and next of kin.” 1 Jarman on Wills, * 589.
In Fitch v. Weber, 6 Hare, 145, the testatrix devised and bequeathed her real and personal es *88 tate, in trust as to the real estate for sale as soon after her decease as conveniently could be, and declared that the trustees should stand possessed of the proceeds of the sale as a fund of personal and not real estate; for which purpose she declared such proceeds or any part thereof, should not in any event lapse or result for the benefit of her heir-at-law: and, after giving legacies, the testatrix directed that the residue of her estate should be applied as she should by any codicil direct or appoint. She made no codicil. Sir J. Wigram, Y. C, after an examination of the authorities, held, that the heir-at-law was entitled to the proceeds' of the real estate undisposed of by the will. He said, “I feel myself called upon, to follow the course of decisions, in holding that the testatrix has expressed an intention to exclude the heir only for the purposes of her will, and that, if her words express more, and she has failed to say who shall take the surplus the law must dispose of it.” In other words, unless some disposition is made of the proceeds of land directed to be converted they will go to the heir as land. There must be not only an intention to convert but also a disposition of the property in the event of a failure of the particular purpose of the conversion, and it is. a devolution by will, although it may be to the same persons to whom it would have gone, in the absence of the will, if in jiact personal property.
If the widow is not mentioned in the will it cannot be- said that the testator intended by his will a benefit for her. And if the testator may, by his will, determine the quality of his estate, as *89 well for those who take by law as for those who take under the will, so that for his widow what was realty becomes personalty and enhances the value of her share, then he may also transmute personal property into real property, so that she will receive one-third of his estate for her life only, whereas by law she is entiled to one-third absolutely.

Judgments reversed.

Crew, C. J., Spear, and Shauck, JJ., concur.