JAMES H. CONNELL *et al.*

*v.*

HENRY CROSBY, County Treasurer.

*Opinion filed June 23, 1904.*

1. INHERITANCE TAX—*county court has jurisdiction of a proceeding to collect inheritance tax.* Section 4 of the Inheritance Tax act, requiring an administrator or executor "to make application to the court having jurisdiction of his accounts" in the event of questions arising as to apportionment of inheritance taxes, does not oust the county court of jurisdiction of a proceeding to collect an inheritance tax, although the estate has been certified to the circuit court for settlement.

2. SAME—*amendment of 1901, exempting educational bequests, is not retroactive.* The amendment of 1901 to the Inheritance Tax act, exempting bequests for educational purposes from the provisions of the act, is not retroactive, and if a bequest for educational purposes was subject to an inheritance tax at the time of testator's death the tax may be collected, notwithstanding the proceeding was not begun until after said amendment took effect.

3. SAME—*lands situated in foreign State are not subject to inheritance tax.* Lands situated in States other than Illinois, and belonging to one who was a resident of Illinois at the time of his death, are not subject to our Inheritance Tax law.

4. SAME—*when doctrine of equitable conversion does not apply.* An inheritance tax upon funds derived from the sale of lands situated in foreign States cannot be collected in a suit at law upon the ground of equitable conversion by will, since the doctrine of equitable conversion is not given effect in courts of law.

5. SAME—*when expense of defending will should be deducted in computing tax.* Expenses incurred by executors in defending the will and sustaining its validity when attacked by the heirs should be deducted from the amount upon which an inheritance tax is to be computed, where the action of the executors operated in the interest of the State, as the recipient of the tax, which would have been materially less had the will been set aside.

6. SAME—*when section 2 of act does not apply.* Section 2 of the Inheritance Tax act, exempting from the tax a life estate devised or bequeathed to the wife, has no application where the wife renounces the will and elects to take other interests in the testator's property than the life estate devised or bequeathed to her.

7. PLEADING—*when amendment relates back to beginning of suit.* An amendment to an application of a county treasurer to fix an in-

heritance tax, which corrects the rates at which such tax shall be computed under the same facts alleged in the original application, relates back to the commencement of the proceeding, and is not subject to the bar of the Statute of Limitations.

APPEAL from the County Court of Mercer county; the Hon. W. T. CHURCH, Judge, presiding.

L. D. THOMASON, for appellants:

The provisions of the Inheritance Tax act, taken together, show that jurisdiction of a proceeding to collect the tax is vested in the court in which the estate is being administered and that such proceeding is a part of the administration of the estate. Where the administration is in a court other than the county court, the proceeding to collect that tax should be in that court.

The repeal of a tax law puts an end to all right to proceed to a levy of taxes under it, even in cases already commenced, unless the right is reserved in the repealing statute, and statutory remedies for the enforcement of the tax are gone when the statute is repealed without an express saving. Cooley on Taxation, 18; *VanInwagen* v. *Chicago*, 61 Ill. 31; *People* v. *Bank*, 67 N. Y. 109; DosPassos on Inheritance Tax, 422, 423.

The effect of a repealing statute is to obliterate the prior law as completely from the records as if it had never been passed, and it must be considered as a law that never existed, except for those actions which were commenced, prosecuted and concluded while it was an existing law. *Vance* v. *Rankin*, 194 Ill. 625; *County of Menard* v. *Kincaid*, 71 id. 587; *Naylor* v. *Galesburg*, 56 id. 285; *Eaton* v. *Graham*, 11 id. 619; *Chicago* v. *James*, 114 id. 479; *Palmer* v. *Danville*, 166 id. 42; *Wilson* v. *Railway Co.* 64 id. 542; *Boynton* v. *Holcomb*, 151 id. 294.

Lands not in the State of Illinois, and the proceeds of lands not in the State of Illinois, are not subject to the inheritance tax of Illinois. *Weaver's Estate* v. *State*, 81 N. W. Rep. 602; *In re Swift's Estate*, 32 N. E. Rep. 1096;

*Callahan* v. *Woodbridge,* 51 id. 176; *In re Hale's Estate,* 28 Atl. Rep. 1071; *In re Bittinger's Estate,* 18 id. 132; *In re Coleman's Estate,* 28 id. 137; *In re Handley's Estate,* 37 id. 587.

In cases involving the inheritance tax, where the question at issue is involved in doubt, the doubt should be resolved in favor of the tax-payer and against the taxing power. *In re Eusten's Will,* 21 N. E. Rep. 87; *In re Fayerweather,* 38 id. 278; *In re Harbick's Will,* 55 id. 850.

H. J. HAMLIN, Attorney General, WILLIAM J. GRAHAM, State's Attorney, (HENRY E. BURGESS, of counsel,) for appellee:

The tax accrues to the State at the time of the testator's death, under the statute. Hurd's Stat. 1901, chap. 120, sec. 368.

This statute vests the right to the tax in the State at the time of the testator's death, and the amendment of May, 1901, did not affect such right. *Provident Hospital* v. *People,* 198 Ill. 495.

A statute is not given a retroactive operation unless such an intention is unequivocally expressed therein. *People* v. *McClellan,* 137 Ill. 352; *Fisher* v. *Green,* 142 id. 80.

Where a testator dies owning foreign realty, and in his will makes an absolute direction that such realty shall be sold and bequeaths the proceeds to legatees within the State, such legacies or proceeds are subject to the inheritance tax. *Miller* v. *Commonwealth,* 111 Pa. St. 321; *In re Williamson's Estate,* 153 id. 508.

The inheritance tax is a tax on the succession. *Kochersperger* v. *Drake,* 167 Ill. 122.

The widow having renounced the provisions of the will and elected to take under the statute, her life estate was eliminated and her rights in the estate related back to death of the testator. The estates of the remaindermen theretofore subject to the life estate given by the will were likewise accelerated. *Billings* v. *People,* 189 Ill. 472; *Blatchford* v. *Newberry,* 99 id. 11.

Expenses attending litigation to determine the validity of a will are not ordinary expenses of administration, nor to be deducted from the value of the successions in computing the inheritance tax. *In re Westurn's Estate*, 46 N. E. Rep. 315; *In re Lines' Estate*, 26 Atl. Rep. 728.

Where no new cause of action is introduced, courts will allow amendments liberally, for the purpose of avoiding the running of the statute. *Thomas* v. *Insurance Co.* 108 Ill. 91; *McCall* v. *Lee*, 120 id. 261.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a proceeding instituted in the county court of Mercer county by the appellee, county treasurer of the county, under the provisions of sections 13, 14 and 15 of the act entitled "An act to tax gifts, legacies and inheritances," etc., approved June 15, 1895, (Hurd's Stat. 1899, chap. 120, pars. 378-380,) and to fix and recover the amount of the inheritance tax alleged to be payable by James H. Connell, executor, and Vashti Drury, executrix, of the last will of William Drury, deceased. The proceeding resulted in the entry of an order in the said county court finding that said executor and executrix should, in that capacity, pay to the county treasurer of Mercer county the sum of $3310.23, with interest thereon at six percentum per annum from the 13th day of March, 1897, as inheritance tax on the trust funds in the hands of said executrix and executor. This is an appeal perfected to reverse that order.

It is first insisted the county court erred in overruling the contention of the appellants that the county court was wanting in power and jurisdiction to entertain and determine the proceeding, and that the circuit court of Mercer county was vested with such jurisdiction. William Drury was a resident of Mercer county and died therein. Section 13 of said act of 1895 (paragraph 378 of said chapter 120 of the statute) expressly clothes the county court of the county in which the decedent was

a resident at the time of his death with jurisdiction to entertain, hear and determine such proceedings. But at the time of the death of said William Drury said appellant James H. Connell, who was one of the executors of the will of the deceased, was the judge of the county court of Mercer county, and the matter of the settlement of the estate was for that reason certified to the circuit court of Mercer county, in obedience to the requirements of section 114 of chapter 37 of Hurd's Statutes of 1899, (par. 204,) and the circuit court thereupon proceeded to adjust and settle the matters pertaining to the estate.

Section 4 of the act of June 15, 1895, (Hurd's Stat. 1899, chap. 120, par. 369,) after requiring administrators and executors to deduct from any trust or legacy or money for distribution any tax that may be payable therefrom, and if such legacy or property be not in money to collect the tax, on the appraised value thereof, from the legatee or person entitled, provides, if the legacy or property be not in money such administrator or executor shall "make application to the court having jurisdiction of his accounts, to make an apportionment if the case requires it of the sum to be paid into his hands by such legatees, and for such further order relative thereof as the case may acquire." When the application at bar was filed, the term of office of the said executor, as judge of the county court of Mercer county, had expired and his successor had been elected and inducted into office, but the circuit court of Mercer county still had and held jurisdiction of the accounts of the executors of said estate, and for that reason it is argued that under the provisions of said section 4, (par. 369,) before referred to, the application should have been made to the circuit court.

Section 13 of the Inheritance Tax act (Hurd's Stat. 1899, chap. 120, par. 378,) expressly confers jurisdiction on the county court of the county wherein the deceased resided at the time of his death, "to hear and determine

all questions in relations to the tax arising under the provisions of this act." Section 14 (par. 379) authorizes the issuance of summons out of that court, and provides the pleading and practice, and for the hearing and determination of the proceedings, and for the fees and costs accruing therein; and section 15 (par. 380) makes it the duty of the State's attorney of the county, if he has cause to believe a tax is due and unpaid, to "prosecute the proceeding in the county court of the proper county, as provided in section 14 of this act for the enforcement and collection of such tax."

Said sections 13, 14 and 15 of the act of 1895 clothe the county court with jurisdiction of proceedings to collect the tax and provide a complete code of procedure in such cases. and we do not think the provisions of section 4 of the act, hereinbefore quoted, have any effect to oust the county court of jurisdiction of such proceeding and to lodge such jurisdiction in the circuit court in the cases of estates which have been certified to the latter court for settlement. The provisions of said section 4 do not relate to proceedings on the part of the State's attorney, acting as the representative of the public, to enforce the collection of the tax, but only to the course to be pursued by an executor or administrator in the event questions arise as to the apportionment of taxes in the course of the settlement of the affairs of the estate. There was no intent, in framing that provision, to deprive the county court, in any event, of jurisdiction of proceedings on the part of the State to collect the tax.

The will of the decedent directed that 91/100 of the residue of his estate should be devoted by his executors to the founding of an institution in Mercer county, to be called the "William and Vashti College," for the purpose of diffusing knowledge "along polytechnic lines, where the education would be practical and of a mechanical and industrial character as well as scientific and classical, and free from denominational or sectarian bias or

210—25

influence." Said William Drury died on March 13, 1897. Under the statute then in force, bequests for educational purposes were subject to the payment of the inheritance or succession tax. Subsequently, on July 1, 1901, the statute was so amended as to exempt bequests for educational purposes. (Hurd's Stat. 1901, chap. 120, par. 367*a*.) The petition of the State's attorney, in the case at bar, for the collection of the tax on this bequest was not filed until after the amendatory act of 1901 had been adopted and become effective. The appellants contend the right to collect the tax on this. bequest for educational purposes, which arose at the time of the death of the said William Drury, was not a complete and valid right, but was a mere inchoate right, and so remained executory until the proceeding provided by the statute for the collection of the tax should be at least begun, if not completed, and that the exemption of bequests of this character from liability to pay the tax, which was effected by the act of 1901, operated to destroy the mere executory right to demand and collect a tax on the bequest for educational purposes.

The amendatory act of 1901 does not, in terms, repeal the former act. It contains no saving clause, nor does it in terms purport to affect, in any way, any right, whether vested or inchoate, which might then exist. Section 4 of chapter 131 (Hurd's Stat. 1899, p. 1650,) furnishes the guide for determining the effect to be given the amendatory enactment. That section provides: "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any * * * right accrued or claim arising under the former law, or in any way whatever to affect * * * any right accrued or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceedings." It is to be assumed the amendatory act was framed in view of the provisions of said section 4

of chapter 131, and that it was the legislative intent the amendatory act should have prospective operation, only. Statutes declaring the effect of or the construction to be given subsequently enacted repealing acts will be deemed operative and effective by the courts unless a contrary intent is plainly manifested in the later enactment. (*Farmer* v. *People,* 77 Ill. 322; 26 Am. & Eng. Ency. of Law,—2d ed.—681.) The right which accrued or the claim which arose to the tax, under the statute in force at the time of the death of the testator, was therefore unaffected, and remained enforcible notwithstanding the subsequent enactment exempting bequests for educational purposes from the tax. *Farmer* v. *People, supra; Provident Hospital* v. *People,* 198 Ill. 495.

The decedent died seized of the title to real estate which was situate in States other than Illinois. The testator, by his will, directed that his just debts should be paid and Ed L. Drury acquitted of all his liabilities to the deceased, and bequeathed the sum of $10,000 to Vashti, his wife, as her sole and absolute property, and devised and bequeathed the residue of his property, both real and personal, to his wife for and during her natural life, and bequeathed the property remaining after the death of his wife to the appellant James H. Connell in trust, and directed said Connell to convert the property, both real and personal, into money, and to divide the fund so produced into one hundred parts, of equal amounts, and to pay nine of such shares to specified legatees and to devote the remaining 91/100 of the residue to founding the said William and Vashti college. The testator left neither child, children nor descendants thereof. The widow, Vashti, renounced the provisions of the will, and elected to take in lieu of such provisions made for her in the will, and in lieu of dower, one-half of all the real and personal estate of the testator. One-half of all legacies under the will abated as the result of this action of the widow. It is assigned as cross-error that the county

court erred in ruling that an inheritance or succession tax cannot be imposed or laid on land situate in another State, or on the proceeds of the sale of such land by the executors.

Section 1 of the act of June 15, 1895, (3 Starr & Cur. Stat. 1896, chap. 120, par. 316, p. 3528,) which creates the tax, so far as necessary to be considered in the solution of this contention, is as follows: "All property, real, personal and mixed which shall pass by will or by the intestate laws of this State from any person who may die seized or possessed of the same while a resident of this State or, if decedent was not a resident of this State at the time of his death, which property or any part thereof shall be within this State or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor or bargain or or intended to take effect, in possession or enjoyment after such death, to any person or persons or to any body politic or corporate in trust or otherwise, or by reason whereof any person or body politic or corporation shall become beneficially entitled in possession or expectation to any property or income thereof, shall be, and is, subject to a tax at the rate hereinafter specified to be paid to the treasurer of the proper county for the use of the State, and all heirs, legatees and devisees, administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed."

It will be observed that the tax is laid on all property which "shall pass by will or by the intestate laws of the State." Lands in a sister State do not pass under the intestate laws of this State, but under the statutes of the State wherein the land is situate, regulating the devolution of title to land in such State. (*Wunderle* v. *Wunderle*, 144 Ill. 40; *Smith* v. *Smith*, 174 id. 52.) Therefore it is plain it was not the legislative intent that the tax should be laid on real estate situate in a sister State which

belonged to a citizen of Illinois who had died without making a will. If land in a sister State is subject to the tax in any instance, it is only when the owner resident in Illinois has disposed of it by will. If the owner of land situate in a foreign State is content with the devolution of the title which would be effected under the Statute of Descent of the State where the land is situate, those to · whom the land would descend would be free from the tax; but if such owner be dissatisfied with such foreign laws, he could, if the contention of the appellee is correct, not be allowed to control the devolution of the title to his property by will, except under the penalty of subjecting those on whom he would bestow it, to the burden of the tax. It is hardly to be conceived that it was the legis· lative intent to impose this tax as an imposition on the privilege or the right of a resident of this State to dispose of his property by will. No ground of distinction exists to justify such unjust discrimination against the citizen who desires to dispose of his property by his will. It is the general rule that property over which the sovereign power of the State does not extend cannot be made the object of taxation in this State. (*Dutton* v. *Board of Review*, 188 Ill. 386.) We may very reasonably conclude the enactment was adopted in view of this general rule, and that it was not in the contemplation of the General Assembly to lay the tax on land situate in a sister State, rather than to impute to the law-making body the intent to impose on the land of a citizen, if he desired or the circumstances of his property and of those dependent upon him required he should control the disposition thereof by will, a burden of taxation, and to exempt the land from such burden if the owner would refrain from making a will and let the laws of a sister State control the devolution of the title to the land. We think, under the proper construction of the section, the tax can only be laid on lands situate in the State. The statute of the State of New York, providing for the collection of inheritance

or succession taxes, is in all material respects the same as our statute so far as this question is concerned, and lands in a sister State have been held not subject to the tax by the court of appeals of that State. *In re Swift's Estate*, 32 N. E. Rep. 1096.

The will directs the conversion of the real estate into money for the purpose of creating a fund to be devoted to the establishment of the college, and it is argued that under the doctrine of equity the land is to be regarded as converted into personalty, and it is urged that the bequest of the proceeds of the sale of the real estate is subject to the tax, as being personalty. The doctrine of equitable conversion is an outgrowth of the maxim of equity that in a court of equity that which ought to have been done is to be regarded as done. The doctrine of equitable conversion is recognized in equity only, and is not given effect in courts of law. (7 Am. & Eng. Ency. of Law,—2d ed.—465). It cannot be applied in proceedings for the collection of inheritance or succession taxes. *In re Swift's Estate, supra.*

It was stipulated that the heirs-at-law of said William Drury, deceased, instituted a suit in equity, under the statute, to contest the validity of the will of said testator, and that the appellant executors, in defraying proper and lawful expenses in and about the defense of the suit, disbursed the sum of $12,363.65 out of the assets of the estate. In the accounting of the executors this expenditure was presented to and allowed by the court as a proper disbursement. In the ascertainment of the amount on which to compute the tax, the county court refused to deduct the amount of this disbursement. In this we think the court was in error. Under the statute which authorizes the tax, property which descends to heirs-at-law, within specified degree of kinship to the testator, is only taxable on the value thereof in excess of $20,000 which descends to each heir, and the rate of tax in such instance is only one dollar on each $100 of such

excess. The property descending to other heirs-at-law of a different class is exempt from taxation except on the excess of $2000 received by each person within such class, and the rate of taxation on the amounts received by those within this class is two dollars on each $100. The statute exempts no part of a bequest which is not to be taken by an heir-at-law, and fixes a higher rate if taken on bequests and legacies to others than heirs-at-law, the rate of taxation in this case being fixed at six per cent. The defense made by the executors in the proceeding to contest the will was for the purpose of upholding and maintaining the bequest in favor of the college. The record does not disclose the degree of kinship of the heirs-at-law who contested the validity of the will, and for that reason it cannot be known to what extent the appellee, as the representative of the public in the matter of the collection of this tax, would have been affected had the contest of the will been successful. The exemptions allowed to heirs-at-law might have left no property whatever subject to the tax had the will been declared invalid. That the amount to be taxed would have been materially lessened by such exemptions is certain, and that the rate of taxation on such lesser amount would have been materially lowered is also certain. The successful defense of the attack upon the validity of the will was in the interest of the State, as the recipient of the tax, on the bequest to the college, and we think that in ascertaining the amount on which the tax should be computed the expenditures in defense of the will should have been deducted, so that the tax should not be computed upon it.

Counsel for appellee cite *In re Line's Estate*, 26 Atl. Rep. (Pa.) 728, and *In re Westurn's Estate*, 46 N. E. Rep. (N. Y.) 315, as authority for an opposite conclusion. In the former of these cases the trustee incurred as expenses of administration the sum of $3262.80, and it was held that that sum was properly subtracted from the total amount

of the estate in ascertaining the amount upon which the tax should be figured. . Legatees in that case incurred an expense of something over $12,000 in employing counsel to assist the trustee, and the court refused to allow any deduction of that $12,000. The distinction is, that that was an expense not incurred by the trustee, and was therefore no part of the expenses of the administration of the estate, so far as the trustee was concerned. In the other case, (*In re Westurn's Estate,*) the sum which it was sought to subtract as expenses of administration was not money expended by an administrator, executor or trustee, but by heirs who had successfully contested the will, for solicitor's fees and other expenses in setting aside the will. It is thus seen that neither of these cases supports the position taken by the appellee.

The total value of the property of the decedent was $321,555.04. It consisted of real estate in Illinois of the value of $199,599, personal property in Illinois of the value of $27,576.14, and real estate in Kansas, Colorado, Nebraska and Texas of the aggregate value of $94,-379.90. The indebtedness aggregated $126,975.90, in addition to the costs and expenses of the settlement of the estate. The indebtedness was due creditors who resided in Illinois, except a note of $4507.10, which was due to a citizen of Minnesota but was made specially payable at Keithsburg, in Mercer county, Illinois. The court decided that the tax could not be computed on the value of the lands situated in other States than Illinois, but held that in order to ascertain the amount on which to compute the tax the value of the personal property should be deducted from the total indebtedness of the estate, and the remaining indebtedness should be apportioned upon all·the real estate, both foreign and domestic, and that the tax should·be laid upon the amount so apportioned on the value of the lands in Illinois. The lands in the sister States were not subject to any specific liens to secure any of the indebtedness or specially charged

with the payment of any part of it by any act of the testator, nor was any of the indebtedness due to any citizen of any sister State in which such lands were situate. This ruling operated to increase the amount on which the tax was required to be paid to the extent that the remainder of the indebtedness was so apportioned on the lands in sister States, and by indirection laid a tax on the foreign lands, which, as we have seen, could not be lawfully directly imposed thereon. The ruling was erroneous. If the foreign lands had in any way been subject to an encumbrance or lien, vendor's or otherwise, to secure the payment of indebtedness of the testator, or if the indebtedness had been due to a citizen of the sister State wherein was situated the real estate belonging to the decedent, a different question might be presented.

The provision of section 2 of the act of 1895, (Hurd's Stat. 1899, par. 367, p. 1461,) exempting a life estate in any property devised or bequeathed to the wife of the testator from the tax on such inheritance or succession, has no application when, as here, the wife renounces the provisions of the will and elects not to take the life estate devised or bequeathed to her, but to take other interests in the property of the testator, as she is permitted to do under the statute.

In the original application of the treasurer a tax to be computed at the rate of three percentum was claimed. After the expiration of the period of five years within which the right to sue for the tax is limited by section 22 of the act, the application was, by leave of the court, amended by asking that the tax be computed at different specified rates, depending on the finding of the court as to the facts. The amendment did not set up a new or different cause of action, but merely corrected the statement in the original application as to the rate at which, under the statute, the tax should be computed under the state of facts alleged in the original application. The

amendment; therefore, related back to the commencement of the proceeding, and is not amenable to the bar of the statute.   6 Illinois Cyc. Dig. 516, 517, and notes.

For the reasons indicated, the order of the county court is reversed, and the cause will be remanded to that court with directions to proceed in conformity with what is here said.

*Reversed and remanded.*

Mr. JUSTICE SCOTT took no part in the consideration or in the decision of this case.