FOURTH DIVISION
June 1, 2006

No. 1-04-3517

| | | |
|---|---|---|
| JAMES W. McGINLEY, MARGARET J. McGINLEY, | ) | Appeal from the |
| and ROBERT R. McGINLEY, as Executors of the Estate | ) | Circuit Court of |
| of Jane R. McGinley, and JAY M. GOLDSTEIN, as | ) | Cook County. |
| Executor of the Estate of Nancy L. Goldstein, | ) | |
| | ) | |
| Plaintiffs-Appellees and Cross-Appellants, | ) | |
| | ) | |
| v. | ) | No. 03COIT7 |
| | ) | |
| LISA MADIGAN, as Attorney General of the State | ) | |
| of Illinois,  JUDY BAAR TOPINKA, as Treasurer of the | ) | |
| State of Illinois, and  MARIA PAPPAS, as Treasurer | ) | The Honorable |
| of Cook County, Illinois, | ) | Raymond L. Jagielski, |
| | ) | Judge Presiding. |
| Defendants-Appellants and Cross-Appellees. | ) | |

JUSTICE GREIMAN delivered the opinion of the court:

This appeal concerns the application and constitutionality of Public Acts 93-30 (Pub. Act 93-30, eff. June 20, 2003 (amending 35 ILCS 405/2, 3 (West 2002)) and 94-419 (Pub. Act 94-419, eff. August 2, 2005 (amending 35 ILCS 405/3 (West 2004)) which amended sections 2 and 3 of the Illinois Estate and Generation-Skipping Transfer Tax Act (the Estate Tax Act). Plaintiffs James W. McGinley, Margaret J. McGinley and Robert R. McGinley, the executors of the estate of Jane R. McGinley (the McGinley estate), and Jay M. Goldstein, the executor of the estate of Nancy L. Goldstein (the Goldstein estate), filed a complaint in the trial court against defendants Lisa Madigan, the Attorney General of the State of Illinois, and Judy Baar Topinka, the Treasurer of the State of Illinois, alleging that the legislature did not intend for Public Act 93-30 to apply retroactively to their estates, that retroactive application violated Illinois constitutional law and that Public Act 93-30 was invalid because it violated Illinois and federal

constitutional law and requesting an award of attorney fees.

The trial court found that the legislature did not intend the amendment to be applied retroactively and that, because it was substantive, the amendment applied prospectively only. Accordingly, the trial court entered summary judgment in favor of plaintiffs on the issue of retroactivity. Having found that the amendment did not retroactively apply to plaintiffs, the trial court dismissed the remaining counts of plaintiffs' complaint as moot. Defendants appealed and plaintiffs cross-appealed. On appeal, the parties contest the retroactive application and constitutionality of Public Acts 93-30 and 94-419, the latter statute being enacted during the pendency of this appeal, and whether plaintiffs are entitled to attorney fees.

We will begin our discussion of this case with a review of the interplay between Illinois estate tax law and federal tax law.

Federal law has historically allowed an estate to take a federal tax credit for the taxes the estate pays to the state. See 26 U.S.C. § 2011 (2000). Accordingly, since 1983, Illinois law has taxed an estate at the maximum rate allowable by the federal tax credit. Specifically, section 2 of the Estate Tax Act formerly provided:

" 'State tax credit' means the credit for state tax allowable under Section 2011 or Section 2604 of the Internal Revenue Code." 35 ILCS 405/2 (West 2002).

Section 3 of the Estate Tax Act provided:

"Illinois estate tax. (a) Imposition of Tax. An Illinois estate tax is imposed on every taxable transfer involving transferred property having a tax situs within

1-04-3517

the State of Illinois.

(b) Amount of tax. The amount of the Illinois estate tax shall be the maximum state tax credit allowable with respect to the taxable transfer reduced by the lesser of:

(1) the amount of the state tax credit paid to any other state or states; and

(2) the amount determined by multiplying the maximum state tax credit allowable with respect to the taxable transfer by the percentage which the gross value of the transferred property not having a tax situs in Illinois bears to the gross value of the total transferred property." 35 ILCS 405/3 (West 2002).

In 2001, the federal Economic Growth and Tax Relief Reconciliation Act of 2001 (Pub. L. No. 107-16, 2001 U.S.C.C.A.N. (115 Stat.) 38) (the Reconciliation Act) came into effect. The Reconciliation Act gradually eliminated the state tax credit.

Recognizing that the Reconciliation Act would have the effect of decreasing the revenue the State of Illinois gained in estate taxes, the legislature endeavored to "decouple" Illinois estate tax from the federal estate tax credit. In 2003, with Public Act 93-30, the legislature amended sections 2 and 3 of the Estate Tax Act. Amended section 2 of the Estate Tax Act provided:

" 'State tax credit' means:

(a) For persons dying on or after January 1, 2003 and through December 31, 2005, an amount equal to the full credit

˘3˘

1-04-3517

calculable under Section 2011 or Section 2604 of the Internal Revenue Code as the credit would have been computed and allowed under the Internal Revenue Code as in effect on December 31, 2001, without the reduction in the State Death Tax Credit as provided in Section 2011(b)(2) or the termination of the State Death Tax Credit as provided in Section 2011(f) as enacted by the Economic Growth and Tax Relief Reconciliation Act of 2001, but recognizing the increased applicable exclusion amount through December 31, 2005." 35 ILCS 405/2 (West 2004).

Public Act 93-30 also amended section 3(b) of the Estate Tax Act as follows:

"(b) Amount of tax. The amount of the Illinois estate tax shall be the state tax credit, as defined in Section 2 of this Act, with respect to the taxable transfer reduced by the lesser of:

(1) the amount of the state tax credit paid to any other state or states; and

(2) the amount determined by multiplying the maximum state tax credit allowable with respect to the taxable transfer by the percentage which the gross value of the transferred property not having a tax situs in Illinois bears to the gross value of the total transferred property." 35 ILCS 405/3(b) (West 2004).

Public Act 93-30 took effect on June 20, 2003. In assessing an estate's Illinois tax, Public Act

1-04-3517

93-30 did not differentiate between estate property located in Illinois and that located outside of Illinois.

Most recently, while this appeal was pending, section 3 of the Estate Tax Act was further amended by Public Act 94-419, which took effect on August 2, 2005. Public Act 94-419 amended subsection (b) of section 3 to read:

"(b) Amount of tax. On estates of persons dying before January 1, 2003, the amount of the Illinois estate tax shall be the state tax credit, as defined in Section 2 of this Act, with respect to the taxable transfer reduced by the lesser of:

(1) the amount of the state tax credit paid to any other state or states; and

(2) the amount determined by multiplying the maximum state tax credit allowable with respect to the taxable transfer by the percentage which the gross value of the transferred property not having a tax situs in Illinois bears to the gross value of the total transferred property." Pub. Act 94-419, eff. August 2, 2005 (amending 35 ILCS 405/3 (West 2004)).

Public Act 94-419 also added subsection (c) of section 3, which provides:

"(c) On estates of persons dying on or after January 1, 2003, the amount of the Illinois estate tax shall be the state tax credit, as defined in Section 2 of this Act, reduced by the amount determined by multiplying the state tax credit with respect to the taxable transfer by the percentage which the gross value of the

transferred property not having a tax situs in Illinois bears to the gross value of the total transferred property." Pub. Act 94-419, eff. August 2, 2005 (amending 35 ILCS 405/3 (West 2004).

Pursuant to section 3(b) as amended by Public Act 93-30, the value of the entire estate, including both in-state and out-of-state property, was considered in calculating the Illinois estate tax to be levied. The amount of Illinois tax was then reduced by the taxes paid to another state. However, as a practical effect, if the other state had a lower tax rate, Illinois would, in effect, collect taxes on the out-of-state property in the amount of the difference between Illinois's tax rate and the other state's lower tax rate. Accordingly, Public Act 93-30 allowed an Illinois tax to be levied against the property of an estate located in another state. With section 3(c), added by Public Act 94-419, the legislature purportedly remedied the possible constitutional problem created by section 3(b) as amended by Public Act 93-30 because section 3(c) first determines what percentage of an estate is located in Illinois and then levies a tax on that property with a situs in Illinois.

We turn now to the facts of the present case. Jane R. McGinley (McGinley) died on February 16, 2003. Pursuant to the Estate Tax Act as amended by Public Act 93-30, her estate paid defendants $2,340,392.17. McGinley held property in Illinois, Wisconsin and Florida. Nancy L. Goldstein (Goldstein) died on February 22, 2003. Pursuant to the Estate Tax Act as amended by Public Act 93-30, her estate paid defendants $1,661,537.96. Goldstein held property in Illinois.

On December 9, 2003, plaintiffs filed a five-count verified complaint for declaratory and

injunctive relief pursuant to the State Officers and Employees Money Disposition Act (the Protest Monies Act) (30 ILCS 230/1 *et seq.* (West 2002)). Count I of plaintiffs' complaint alleged that the amendment to section 2 of the Estate Tax Act effected by Public Act 93-30 could not be applied retroactively to persons, like McGinley and Goldstein, dying after January 1, 2003, and before the effective date of the amendment; count II alleged that retroactive application of the amendment violated the due process clause of the Illinois Constitution; count III alleged that the amendment violated federal due process and that plaintiffs were entitled to an attorney fees award pursuant to federal law; count IV alleged that the amendment was invalid because its passage was not in compliance with the three-readings rule of the Illinois Constitution; and count V alleged that plaintiffs were entitled to an attorney fees award pursuant to Illinois law. As a result of plaintiffs' suit, the court entered a temporary restraining order directing the parties to retain $1,280,912.98 from the McGinley estate and $830,768.98 from the Goldstein estate in a protest fund pending the outcome of the case. These figures represent the amount plaintiffs would have overpaid if Public Act 93-30 did not apply to their estates.

On May 13, 2004, defendants moved to strike and dismiss plaintiffs' counts III and V. On June 28, 2004, plaintiffs filed a response to defendants' motion and moved for summary judgment. On August 12, 2004, defendants filed a cross-motion for summary judgment on counts I through IV.

At a hearing on the parties' motions, curiously, the court found that the legislature had not shown a reason for amending section 2 of the Estate Tax Act and that, therefore, the amendment would not be applied retroactively. Accordingly, on October 26, 2004, the trial

court entered summary judgment in favor of plaintiffs on count I, dismissed counts II through IV as moot and dismissed count V with prejudice. On November 22, 2004, Madigan appealed the trial court's entry of summary judgment in favor of plaintiffs on count I. Baar Topinka and Pappas joined Madigan's appeal. On December 1, 2004, plaintiffs cross-appealed from the dismissal of their constitutional claims "[o]ut of an abundance of caution" and of their attorney fees claims.

On appeal, defendants initially contended that, contrary to the trial court's finding, the clear language of Public Act 93-30 evidences the legislature's intent that the amendments therein be applied retroactively.

Plaintiffs initially responded that the legislature did not clearly intend retroactive application of Public Act 93-30 and further raised the Illinois and federal constitutional challenges to the amendment that they raised in their complaint and requested that we award attorney fees under Illinois and federal law.

In their reply brief, filed after the effective date of Public Act 94-419, defendants again argued that the clear language of Public Act 93-30 evidences the legislature's retroactive intent, that Public Act 93-30 did not violate the Illinois Constitution, that plaintiffs' argument regarding Public Act 93-30's alleged violation of the federal constitution was moot because Public Act 94-419 cured the defect of Public Act 93-30, and that plaintiffs were not entitled to attorney fees under Illinois or federal law.

Plaintiffs replied that Public Act 93-30 violated the federal constitution, that Public Act 94-419 does not cure the federal constitutional infirmity of Public Act 93-30, that the clear

retroactive language of Public Act 94-419 demonstrates that the legislature did not clearly intend retroactive application of Public Act 93-30, and that retroactive application of Public Acts 93-30 and 94-419 would violate the Illinois Constitution. Plaintiffs also repeated their contention that they were entitled to attorney fees.

We permitted defendants to file a sur-reply brief in which they argued that the language of Public Act 94-419 supports their contention that the legislature clearly intended Public Act 93-30 to be applied retroactively and that Public Act 94-419 cured any federal constitutional violations of Public Act 93-30.

Plaintiffs, likewise, were permitted to file a sur-reply brief in which they argued that Public Act 94-419 violates the Illinois and federal constitutions.

We must first address two outstanding motions filed by defendants that we took with the case. After plaintiffs filed their reply brief, defendants filed a motion to strike the portions of plaintiffs' reply brief concerning the retroactivity and constitutionality of Public Act 94-419 and the portions of its appendix containing computations of the McGinley estate's tax if Public Act 94-419 applied and if Public Act 94-419 did not apply. Defendants argued that the objected-to arguments and evidence had not been presented to the trial court and, therefore, were not properly before this court. Defendants prayed that, in the alternative to striking the objected-to portions of plaintiffs' reply brief, we permit defendants to file a sur-reply brief.

In response, plaintiffs noted that defendants had raised the issue of the applicability and constitutionality of Public Act 94-419, declaring, as a foregone conclusion, that Public Act 94-419 applied and was constitutional and that, as a result, plaintiffs' federal due process argument

was moot. Plaintiffs asserted that they should be permitted to respond to such conclusions.

When the parties filed their notices of appeal, the subject of this appeal was the retroactivity and the constitutionality of Public Act 93-30, which provided that for persons dying on or after January 1, 2003, the amount of Illinois tax would be equal to the full state tax credit calculable under the Internal Revenue Code that was in effect on December 30, 2001. However, we must decide this case in accordance with the law as it now exists unless that law affects the vested rights of the parties. See Island Lake Water Co. v. La Salle Development Corp., 143 Ill. App. 3d 310, 316 (1986) ("[a]s a general rule, a legislative body has a continuing right to amend a statute or ordinance, even while litigation is pending involving the legislation, and the court must decide the case in accordance with the law in effect at the time of decision"); Taylor v. County of Peoria, 312 Ill. App. 3d 470, 472 (2000) (finding that a statutory amendment authorizing the imposition of a fee for taking of bail was procedural and did not impinge vested rights and was, therefore, applicable to a matter pending on appeal at the time of the amendment in which the plaintiff alleged that the imposition of the fee was not statutorily authorized).

As the law now stands, after the enactment of Public Act 94-419, plaintiffs' estates are governed by section 3(c), which provides that for persons dying on or after January 1, 2003, the amount of Illinois tax is equal to the full state tax credit calculable under the Internal Revenue Code that was in effect on December 30, 2001, reduced by the percentage of those persons' estates that are located out of state. Accordingly, we find that the parties' arguments regarding the constitutionality of Public Act 94-419 are entirely appropriate and deny defendants' motion that we strike such arguments.

1-04-3517

Next, we grant defendants' motion to strike pages S13 through S16 of the appendix of plaintiffs' reply brief. The objected-to pages of the appendix of plaintiffs' reply brief consist of a letter from plaintiffs' attorney to Madigan's attorney to which plaintiffs' attorney attached an accounting of the refund due to the McGinley estate if Public Act 94-419 were found to be constitutional and the refund due if Public Act 94-419 were not found to be constitutional. The body of plaintiffs' attorney's letter indicates the plaintiffs' belief that application of Public Act 94-419 would violate Illinois and federal due process. Generally, we may not consider evidence that was not before the trial court. Paul H. Schwendener, Inc. v. Jupiter Electric Co., 358 Ill. App. 3d 65, 77 (2005). Accordingly, inasmuch as the arguments articulated in the letter are repeated in plaintiffs' briefs and defendants have not agreed to the accounting in the attachments, we will not consider page S13 through S16 of plaintiffs' reply brief appendix.

We turn now to Public Act 94-419. The parties agree that the legislature clearly intended Public Act 94-419 to be applied retroactively to plaintiffs' estates. Plaintiffs contend, however, that retroactive application of Public Act 94-419 would violate their Illinois due process rights. Plaintiffs seem to argue that, because Public Act 93-30 did not clearly indicate the legislature's retroactive intent, and because its retroactive application would violate Illinois due process, it was not to be applied retroactively to the estates of persons dying between January 1, 2003, and June 20, 2003, the effective date of Public Act 93-30. Therefore, the decoupled taxing scheme effected by Public Act 93-30 only applied to the estates of those persons dying on or after June 20, 2003. By this reasoning, plaintiffs' estates were taxed according to the coupled taxing scheme until the enactment of Public Act 94-419. According to plaintiffs, therefore, to apply the

˘11˘

decoupled scheme of Public Act 94-419 to plaintiffs' estates would require us to apply the provision to estates that arose 2 1/2 years before its effective date. Such a lengthy retroactive period, plaintiffs argue, would clearly violate Illinois due process. They advise this court, therefore, to find Public Act 94-419 retroactive only to June 20, 2003, the effective date of Public Act 93-30. Consequently, we must begin our analysis of whether Public Act 94-419 offends the Illinois due process clause with a look at the potential retroactivity of Public Act 93-30.

Plaintiffs argue that retroactive application of Public Act 93-30 is barred by Connell v. Crosby, 210 Ill. 380 (1904), in which, plaintiffs aver, the court held that "an Illinois resident's estate tax is determined by the law in effect on the day he or she dies." However, plaintiffs misconstrue the Connell holding. In Connell, the decedent's will provided that a portion of his estate was to be devoted to the establishment of a college. At the time of his death, bequests for educational purposes were subject to the payment of an inheritance tax under Illinois law. Shortly after decedent's death, before a petition for the collection of his estate taxes had been filed, the legislature amended the estate tax laws to exempt bequests for educational purposes. The court rejected the argument that the exemption should apply retroactively to the decedent's estate. The court explained that "[t]he amendatory act of 1901 does not, in terms, repeal the former act. It contains no saving clause, nor does it in terms purport to affect, in any way, any right, whether vested or inchoate, which might then exist." Connell, 210 Ill. at 386. Accordingly, the court held that "[i]t is to be assumed the amendatory act was framed in view of the provisions of said section 4 of chapter 131 [now codified as section 4 of the Statute on

Statutes (5 ILCS 70/4 (West 2004)), which 'reads exactly the same today as it did on July 1, 1874' (Caveney v. Bower, 207 Ill. 2d 82, 94 (2003))], and that it was the legislative intent the amendatory act should have prospective operation, only." Connell, 210 Ill. at 387. We agree with defendants that Connell does not stand for the proposition plaintiffs imply, "that estate taxes are irrevocably fixed on the date of death." On the contrary, Connell simply holds that, if an amendment to the estate tax law does not express the legislature's clear intent that it be applied retroactively, Section 4 of the Statute on Statutes applies.

Pursuant to Connell, therefore, we must first determine whether the legislature clearly intended retroactive application of Public Act 93-30. Defendants argue that in including the language "[f]or persons dying on or after January 1, 2003" (35 ILCS 405/2 (West 2004)) in Public Act 93-30, which became effective on June 20, 2003, the legislature clearly intended retroactive application. Plaintiffs note that the language amending the meaning of "state tax credit" for persons dying on or after January 1, 2003, is found in section 2 of the Estate Tax Act, the definitions section. They observe that defendants can point to no Illinois case finding retroactive legislative intent in the definitions section of a statute.

Illinois follows the federal retroactivity test articulated in Landgraf v. USI Film Products, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). Commonwealth Edison Co. v. Will County Collector, 196 Ill. 2d 27, 39 (2001). "Under the Landgraf test, if the legislature has clearly indicated what the temporal reach of an amended statute should be, then, absent a constitutional prohibition, that expression *** must be given effect." Commonwealth Edison, 196 Ill. 2d at 38. If the legislature has not so indicated, section 4 of the Statute on Statutes,

1-04-3517

which provides that a procedural change in the law may be applied retroactively but that a substantive change in the law will be applied prospectively only, controls. Caveney v. Bower, 207 Ill. 2d 82, 94 (2003).

Accordingly, the first step under the Landgraf test is to interpret the language employed by the legislature.

"The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature, and that inquiry appropriately begins with the language of the statute. [Citation.] There is no rule of construction which allows the court to declare that the legislature did not mean what the plain language of the statute imports. Where an enactment is clear and unambiguous, the court is not free to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express [citations], nor is it necessary for the court to search for any subtle or not readily apparent intention of the legislature [citations]. Where the language of a statute is clear and unambiguous, it will be given effect without resort to other aids for construction." People v. Woodard, 175 Ill. 2d 435, 443 (1997).

Here, with Public Act 93-30, the legislature amended section 2 of the Estate Tax Act, decoupling Illinois estate tax from federal tax and specifically providing an amended definition of state tax credit "[f]or persons dying on or after January 1, 2003 and through December 31, 2005" (35 ILCS 405/2 (West 2002)). We can think of no reason that the legislature would include such language other than to express its intent that the amendments apply retroactively.

Accordingly, contrary to the trial court's conclusion, we believe that the legislature expressed its clear intent that the amendments to section 2 of the Estate Tax Act be applied retroactively to the estates of people dying on or after January 1, 2003. We do not find problematic the fact that the retroactive language is located in the definitions section of the Estate Tax Act. On the contrary, section 3 of the Estate Tax Act, as amended by Public Act 93-30, specifically refers to the definition section ("[t]he amount of the Illinois estate tax shall be the state tax credit, *as defined in Section 2 of this Act*" (emphasis added) (35 ILCS 405/3(b) (West 2004))), so that the definition of state tax credit set out in section 2 is, in effect, incorporated into section 3.

Notably, though we find the intent of the legislature clear on the face of Public Act 93-30 and need not, therefore, examine the amendment's legislative history, the transcripts of the debates on the amendment reveal that the legislature was fully aware that Public Act 93-30 would be applied retroactively. Indicative of the legislature's awareness of the amendment's retroactivity was one of its critic's comment: "and just another kicker: I believe that this bill is retroactive to January 1, of this year." 93 Ill. Gen. Assem., Senate Bill 1725, Senate Debates at 159 (May 31, 2003) (statements of Senator Sullivan).

We find People v. Glisson, 202 Ill. 2d 499 (2002), a case to which plaintiffs analogize the present case, distinguishable. In Glisson, the defendant was convicted of a crime on November 3, 1999. The legislature passed a bill, effective January 1, 2000, exempting the defendant's conduct from criminal liability. The bill contained neither a savings clause providing that it would be retroactive, nor any other language indicating that the legislature intended retroactivity. The supreme court held that because the legislature did not clearly indicate intended

retroactivity, section 4 of the Statute on Statutes applied, and, because the change in the law was substantive, it would not be applied retroactively to the defendant's conviction. Clearly, Public Act 93-30 is distinguishable from the statute at issue in Glisson. Public Act 93-30 specifically states that it applies to people dying on or after January 1, 2003, evidencing the legislature's retroactive intent.

Plaintiffs argue that "[t]he enactment of P.A. 94-419 is an admission that P.A. 93-30 did not contain the clear and express indication of retroactive intent necessary for the Act to overcome the presumption against retroactivity. *** The Attorney General would not have found it necessary to amend the Estate Tax Act [with Public Act 94-419] to make decoupling retroactive to January 1, 2003, if P.A. 93-30 had done so." However, contrary to that argument, in their sur-reply brief, plaintiffs point to the legislative history of Public Act 94-419 and aver that "the sole stated purpose of the bill that became P.A. 94-419, according to the sponsor of that legislation, was to address the unconstitutional taxation of out-of-state property associated with P.A. 93-30."

We find that the Public Act 94-419 was clearly enacted to deal with the constitutional problem of out-of-state taxation associated with Public Act 93-30. That Public Act 94-419 incorporated the language of section 2 of the Estate Tax Act into section 3(c) of the Estate Tax Act may further clarify the legislature's intent that Public Act 94-419 be applied retroactively. However, Public Act 93-30 sufficiently demonstrated the legislature's retroactive intent and we do not see Public Act 94-419 as an admission that Public Act 93-30 did not sufficiently express that intent.

Finally, we reject plaintiffs' suggestion that we find that the legislature did not clearly intend retroactive application of Public Act 93-30 in order to avoid the constitutional challenges they raise to the amendment. While it is true that a court "will not consider the constitutionality of a statute if the case can be disposed of without determining that question" (Bonaguro v. County Officers Electoral Board, 158 Ill. 2d 391, 399 (1994)), this case *cannot* be disposed of without addressing the constitutional challenges because to do so would require this court to misconstrue the legislature's clear intent that Public Act 93-30 be applied retroactively to the estates of people dying on or after January 1, 2003.

We further find that retroactive application of Public Act 93-30 to plaintiffs' estates would not offend Illinois due process.

The supreme court articulated the standard employed when entertaining an Illinois due process provision challenge to a retroactive tax measure in Commonwealth Edison.

" 'A retroactive tax measure does not necessarily violate the due process provisions of either the Illinois or the Federal constitution (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, sec. 2). A court must consider the nature of a tax measure and the circumstances leading to its adoption before the court may determine "that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation." ' [Citations.]

In determining whether a retroactive tax measure is ' "so harsh and oppressive as to transgress the constitutional limitation" ' [citation], courts have considered such factors as the legislative purpose in enacting the amendment

1-04-3517

[citations], the length of the period of retroactivity [citation], whether the taxpayer reasonably and detrimentally relied on the prior law [citation], and whether the taxpayer had adequate notice of the change in the law [citation]." Commonwealth Edison, 196 Ill. 2d at 43-44.

General Telephone Co. of Illinois v. Johnson, 103 Ill. 2d 363, 378-79 (1984). In assessing the validity of a retroactive measure under Illinois due process, "[o]ne fundamental consideration of fairness is that settled expectations honestly arrived at with respect to substantial interests ought not to be defeated." Moore v. Jackson Park Hospital, 95 Ill. 2d 223, 242 (1983). As the supreme court pointed out in Commonwealth Edison, provisions that impose entirely new taxes, as opposed to those that simply increase an existing tax rate, may be "more an upsetting of 'settled expectations.' " Commonwealth Edison, 196 Ill. 2d at 49; see also United States v. Darusmont, 449 U.S. 292, 298, 66 L. Ed. 2d 513, 518-19, 101 S. Ct. 549, 552-53 (1981), quoting Cohan v. Commissioner of Internal Revenue, 39 F. 2d 540, 545 (1930) (" 'Nobody has a vested right in the rate of taxation, which may be retroactively changed at the will of Congress at least for periods of less than twelve months; Congress has done so from the outset. ... The injustice is not greater than if a man chance to make a profitable sale in the months before the general rates are retroactively changed. Such a one may indeed complain that, could he have foreseen the increase, he would have kept the transaction unliquidated, but it will not avail him; he must be prepared for such possibilities, the system being already in operation. His is a different case from that of one who, when he takes action, has no reason to suppose that any transactions of the sort will be taxed at all' ").

ˇ18ˇ

Turning to the factors articulated in <u>Commonwealth Edison</u> for determining whether a retroactive increase in a tax rate comports with due process, we first note that, prior to the enactment of Public Act 93-30, Illinois estate tax rates were coupled with federal estate tax rates. With the passage of the Reconciliation Act, which phased out federal estate taxes, the Illinois legislature was faced with either decoupling its tax rates or losing revenue. Accordingly, the legislature attempted to amend the Illinois Estate Tax Act several times. Finally, Public Act 93-30 was passed and later amended by Public Act 94-419. The parties do not dispute that, in amending the Estate Tax Act and in making the amendments retroactive, the legislature was pursuing the legitimate purpose of avoiding a loss of revenue. Moreover, the amendments effected by Public Act 93-30 were retroactive for a relatively short period of six months.

Regarding their reliance on the preamendment coupled tax rate, plaintiffs urge us to consider the tax imposed by Public Act 93-30 a new tax, rather than an increase in the rate of an existing tax. Because, they argue, the challenged legislation created a new tax, it upset their "settled expectations" that, following the federal Reconciliation Act, their estate tax rates would fall. In our view, Public Act 93-30 did not create a new tax. On the contrary, Illinois has historically assessed estate taxes. Though, for a period beginning in the 1980s and, pursuant to Public Act 93-30, continuing through 2002, the rate at which Illinois assessed estate taxes was coupled with federal law, Illinois continued to assess a tax. Accordingly, when the legislature decoupled Illinois estate tax from federal law, it did not create an entirely new tax on Illinois estates. Instead, it set a new tax rate that was unrelated to the contemporaneous federal estate tax rate.

1-04-3517

We further note that, while plaintiffs may not have received personal notice that the Illinois estate tax rate would be decoupled from the federal rate and would, consequently, not decrease with the Reconciliation Act, the parties agree that prior to the passage of Public Act 93-30 and prior to Goldstein's and McGinley's deaths, several bills had been presented to the Illinois legislature that attempted to decouple the taxes. See, *e.g.,* 92 Ill. Gen. Assem., Senate Bill 1607, January 29, 2002 (defining "state tax credit" as amount allowable under federal estate tax law in effect on December 31, 2000); 92 Ill. Gen. Assem., Senate Bill 2057, February 7, 2002 (same); 92 Ill. Gen. Assem., House Bill 3761, January 10, 2002 (same). Accordingly, plaintiffs had notice that a tax increase was possible. See Darusmont, 449 U.S. at 299, 66 L. Ed. 2d at 519, 101 S. Ct. at 553 (finding that a taxpayer had "ample advance notice" of an increase in tax rate when "[t]he proposed increase in rate had been under public discussion for almost a year before its enactment").

Finally, plaintiffs' argument that they changed their position by remaining in Illinois in reliance on the preamendment estate tax rate, which was coupled with the federal tax rate, does not convince us that the retroactive application of Public Act 93-30 is so "harsh and oppressive" as to violate plaintiffs' due process rights. Plaintiffs argue that, had they known that the Illinois estate tax would have been decoupled from the federal tax following the Reconciliation Act, Goldstein and McGinley would have moved their estates out of Illinois. However, this assertion is purely speculative. Furthermore, as discussed above, Goldstein and McGinley had notice of the possibility that the Illinois legislature would decouple its estate tax rates and could have established residency in another state prior to their deaths.

˘20˘

1-04-3517

Accordingly, we find that the retroactive application of Public Act 93-30 was not barred by the Illinois due process clause. Because Public Act 93-30 constitutionally retroactively applied to plaintiffs' estates, when Public Act 94-419 became effective, the estate taxes plaintiffs' estates owed were already decoupled from the federal tax rates. Consequently, we reject plaintiffs' argument that the retroactive application of Public Act 94-419 offends Illinois due process because it would amount to a decoupling of the coupled estate taxes of estates arising 2 1/2 years before Public Act 94-419's enactment.

We turn now to the federal due process challenges to Public Acts 93-30 and 94-419 raised by plaintiffs. We first note that, while the McGinley estate contains property located out of state, in Wisconsin and Florida, the Goldstein estate only contains property located in Illinois. Accordingly, defendants are correct in arguing that the Goldstein estate also does not have standing to challenge the amendments as violative of its federal due process rights because, as applied to the Goldstein estate, those amendments are constitutional. See Goldblatt Brothers, Inc. v. Industrial Comm'n, 86 Ill. 2d 141, 144 (1981) ("[i]t is well settled that the validity of a statute will be considered only at the [insistence] of parties directly affected by its invalidity, unless the unconstitutional defect is so pervasive as to render the entire act invalid").

The McGinley estate contends, and defendants do not seriously dispute, that Public Act 93-30 violated federal due process when it permitted Illinois to tax property located out of state. However, as stated above, we must decide this case in accordance with the law as it now stands. See Island Lake Water Co., 143 Ill. App. 3d at 316. The Estate Tax Act's scheme for taxing out-of-state property has been amended by Public Act 94-419, which is retroactively applied to the

1-04-3517

McGinley estate. Therefore, the McGinley estate does not have standing to challenge the constitutionality of Public Act 93-30's scheme for taxing out-of-state property because Public Act 93-30's scheme does not apply to it. See Goldblatt, 86 Ill. 2d at 144.

Concerning the McGinley estate's federal due process challenge to Public Act 94-419, defendants contend that any federal due process violation of Public Act 93-30 has been cured by the enactment of Public Act 94-419, which, as discussed above, retroactively applies to plaintiffs' estates. Plaintiffs respond that Public Act 94-419 does not cure the constitutional defect of Public Act 93-30 because Illinois continues to base plaintiffs' tax rates on out-of-state property.

"It has long been the rule that States may refer to nontaxable out-of-State assets in setting their rates for taxable assets." Brady v. New York, 80 N.Y. 2d 596, 603, 592 N.Y.S. 2d 955, 958, 607 N.E.2d 1060, 1063 (1992), citing Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 81 L. Ed. 1193, 57 S. Ct. 772 (1937); Maxwell v. Bugbee, 250 U.S. 525, 63 L. Ed. 1124, 40 S. Ct. 2 (1919); see also Aronov v. Secretary of Revenue, 323 N.C. 132, 371 S.E.2d 468 (1988); Rigby v. Clayton, 274 N.C. 465, 164 S.E.2d 7 (1968); Stevens v. State Tax Assessor, 571 A.2d 1195 (Me. 1990); Wheeler v. State, 127 Vt. 361, 249 A.2d 887 (1969).

Defendants compare Public Act 94-419 to the New Jersey estate tax at issue in Maxwell. In Maxwell, "the tax was first ascertained on the entire estate as if it were the estate of a resident of the state of New Jersey, with all the decedent's property both real and personal located there; the tax was then apportioned and assessed in the proportion that the taxable New Jersey estate bore to the entire estate." Maxwell, 250 U.S. at 534, 63 L. Ed. at 1129, 40 S. Ct. at 4. The

Maxwell plaintiffs objected to the scheme, arguing that the tax amounted "to a deprivation of property without due process of law because it in effect taxes property beyond the jurisdiction of the state." Maxwell, 250 U.S. at 539, 63 L. Ed. at 1131, 40 S. Ct. at 6. The Court upheld the tax scheme, noting that it had frequently held that "[w]hen the state levies taxes within its authority, property not in itself taxable by the state may be used as a measure of the tax imposed." Maxwell, 250 U.S. at 539, 63 L. Ed. at 1131, 40 S. Ct. at 6.

The McGinley estate places great importance on Justice Holmes's dissent to the Maxwell opinion, in which he was joined by three other justices. Justice Holmes stated "[i]t seems to me that when property outside the State is taken into account for the purpose of increasing the tax upon property within it, the property outside is taxed in effect, no matter what form of words may be used." Maxwell, 250 U.S. at 544, 63 L. Ed. at 1131, 40 S. Ct. at 8 (Holmes, J., dissenting).

In support of its argument that Maxwell is no longer good law, the McGinley estate cites Frick v. Pennsylvania, 268 U.S. 473, 69 L. Ed. 1058, 45 S. Ct. 603 (1925). In Frick, the Court struck down a Pennsylvania statute which provided "that where a person domiciled in that state dies seised or possessed of property, real or personal, a tax shall be laid on the transfer of the property from him by will or intestate laws, whether the property be in that state or elsewhere." Frick, 268 U.S. at 487-88, 69 L. Ed. at 1061, 45 S. Ct. at 604. As the McGinley estate points out, in Frick, the Supreme Court referred to Maxwell as a case "on the border line, as is evidenced by the dissent of four members of the Court." Frick, 268 U.S. at 495, 69 L. Ed. at 1065, 45 S. Ct. at 607. Nonetheless, we observe that, in Frick, the Court distinguished the

1-04-3517

Pennsylvania statute from the New Jersey statute at issue in <u>Maxwell</u>. As a North Carolina court explained:

"The Supreme Court distinguished [its <u>Frick</u> holding] from <u>Maxwell</u> on the basis that <u>Maxwell</u> did not involve an attempt to tax local property on the value of the whole; rather, the only bearing the property outside the state had on the tax was on the *rate* of tax imposed on property inside the state. [Citation.]

The essential distinction between <u>Maxwell</u> and <u>Frick</u>, then, is that in the latter case, the *subject* of the tax was personal property located in other states and therefore not within Pennsylvania's jurisdiction, but in the former, the *subject* of the tax was within New Jersey's jurisdiction. In <u>Maxwell</u>, the nontaxable property was used only as a *measure* of the tax imposed on the property located in New Jersey." (Emphasis in original.) <u>Aronov</u>, 323 N.C. at 138, 371 S.E. 2d at 471.

The McGinley estate further argues that the Supreme Court "interred" its <u>Maxwell</u> holding in <u>Treichler v. Wisconsin</u>, 338 U.S. 251, 94 L. Ed. 37, 70 S. Ct. 1 (1949). In <u>Treichler</u>, the Court found that a Wisconsin emergency inheritance tax offended notions of due process. While the tax employed a "sophisticated" formula, "in terms of ultimate consequences," the Court found, it was no different than the statute at issue in <u>Frick</u>, a case the Court had explicitly distinguished from <u>Maxwell</u>, as discussed above. <u>Treichler</u>, 338 U.S. at 256, 94 L. Ed. at 42, 70 S. Ct. at 3. Specifically, the Wisconsin tax authorized a tax on property "rated and measured in part by tangible property, the situs of which was outside Wisconsin" and, as in <u>Frick</u>, it was

1-04-3517

"quite unnecessary to know in either case what property is located within the taxing jurisdiction in order to compute the challenged exaction." Treichler, 338 U.S. at 256, 94 L. Ed. at 42, 70 S. Ct. at 3.

We find Maxwell distinguishable from Treichler and therefore reject the McGinley estate's contention that, after Treichler, Maxwell no longer remains good law. Unlike the taxing scheme in Treichler, the taxing scheme in Maxwell required knowledge of where an estate's property was located and the estate's taxes were reduced by the percentage of the estate that lay outside of the taxing state's borders.

Moreover, Public Act 94-419's scheme for calculating the tax for an estate containing property located out of state is comparable to the constitutional taxing scheme in Maxwell as opposed to those struck down in Frick and Treichler. Here, Public Act 94-419 provides that the amount of Illinois estate tax will be the state tax credit, which takes into account all property owned by the estate, in-state and out, reduced in proportion to the value of the property not located in Illinois. While Public Act 94-419 takes into account plaintiffs' property located out of state as a measure of the tax imposed, only property that is located in Illinois is subject to the tax. Accordingly, pursuant to Maxwell, the taxing scheme set out in Public Act 94-419 does not violate federal notions of due process.

Plaintiffs next raise the issue of separation of powers. Though plaintiffs concede that the legislature clearly intended Public Act 94-419 to apply retroactively to estates of persons dying on or after January 1, 2003, they argue that, if we find that "the circuit court correctly determined that P.A. 93-30 did not apply retroactively," the retroactive language of Public Act 94-419 would

˘25˘

violate the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, Art. II, § 1) because it would represent a legislative attempt to retroactively apply new statutory language to annul the trial court's decision. As discussed above, we find that the trial court erred in finding that Public Act 93-30 was not retroactive. Therefore, by plaintiffs' own admission, this argument need not be addressed.

We also reject plaintiffs' contention that Public Act 93-30 is invalid because it was enacted in violation of the Illinois Constitution's three-readings rule.

The Illinois Constitution provides that a "bill shall be read by title on three different days in each house." Ill. Const. 1970, art. IV, § 8(d). However:

> "Illinois follows the enrolled-bill doctrine. [Citations.] This doctrine
> provides that once the Speaker of the House of Representatives and the President
> of the Senate certify that the procedural requirements for passing a bill have been
> met, a bill is conclusively presumed to have met all procedural requirements for
> passage. [Citations.] Under this precedent, we will not invalidate legislation on
> the basis of the three-readings requirement if the legislation has been certified."
> Friends of the Parks v. Chicago Park District, 203 Ill. 2d 312, 328-29 (2003).

In this case, plaintiffs concede that "continued adherence to the enrolled bill doctrine would defeat [their] Three Readings Rule claim" but urge us, nonetheless, to invalidate Public Act 93-30 as violative of the rule in light of the supreme court's frustration with the legislature's failure to abide by the rule. See, *e.g.,* Friends of the Parks, 203 Ill. 2d at 329 (finding that "the legislature [has] shown remarkably poor self-discipline in policing itself in regard to the three-

readings requirement" and "urg[ing] the legislature to follow the three-readings rule").  However, we are bound to follow precedent and, because it was certified, refuse to find Public Act 93-30 violative of the three-readings provision of the Illinois Constitution.  See New Heights Recovery & Power, LLC v. Bower, 347 Ill. App. 3d 89, 100 (2004).

Finally, plaintiffs contend that they are entitled to attorney fees pursuant to Illinois and federal law.  We need not address these contentions and find that, because they did not prevail on their challenge to the Estate Tax Act, plaintiffs are not entitled to attorney fees.

For the above-stated reasons, we reverse the trial court's judgment and remand this case for an accounting of the amount of refund due to the McGinley estate pursuant to Public Act 94-419.

Reversed and remanded.

QUINN, P.J., and CAMPBELL, J., concur.