SUNDAR, J.T.C.
Plaintiff (“Estate”) moved for partial summary judgment contending that defendant’s computation of the New Jersey estate tax without inclusion of a federally allowed marital deduction is improper as a matter of law. It argues that the New Jersey estate tax is dependent upon the federally calculated and allowed State death tax credit, therefore, defendant (“Taxation”) is bound by the federal estate tax determinations of, and by, the Internal Revenue Service (“IRS”) in this regard. For the same reason, the Estate also argues that Taxation’s disallowance of expenses allowed by the IRS, here, a portion of the executors’ commissions and maintenance expenses for certain real property, are improper.
Taxation cross-moved for partial summary judgment asserting that since the decedent was not married, and since New Jersey does not recognize common-law marriages, Taxation is not bound by the federally allowed marital deduction in computing the New Jersey estate tax. Taxation also asserts that its disallowance of a portion of the executors’ commissions is in accordance with federal and New Jersey law. For purposes of this motion, it agrees to allow the maintenance expenses which it had previously disallowed on grounds it was never administratively protested.
The court finds that although decoupled, the computation of the New Jersey estate tax is still based upon the amount of the *604 federal State death tax credit allowable as of December 31, 2001. Nonetheless, this tie-in does not bar Taxation from examining the federally allowed marital deduction to ensure that the same accords with federal estate tax laws as of that date. In the absence of a court’s finding or recognition of a common-law marriage status, Taxation is not irrevocably bound by the federally allowed marital deduction if the same is not in accordance "with New Jersey’s law governing common-law marriages. This is because (i) the amount of the federal State death tax credit is impacted by the amount of the federally allowed marital deduction; (ii) the marital deduction is only allowed to a “spouse;” (iii) the determination of a “spouse” is controlled only by State law; and (iv) in this case, the IRS’ determination that there was a common-law marriage was devoid of any analysis or application of state law. The court therefore finds that Taxation’s disregard of the federally allowed marital deduction is proper.
The court however finds that Taxation’s denial of a portion of the executors’ commissions is improper. The federal estate tax regulations allow a deduction for the same under the generally accepted practice in the State where the decedent’s estate is being administered, here, New Jersey. N.J.S.A. 3B:18-14 allows commissions based upon the total corpus received and administered by a fiduciary. Although Taxation’s inheritance tax regulation incorporates N.J.S.A 3B:18-14, it also limits commission on real property only if the same is actually sold. There is no such limitation under N.J.S.A. 3B.-18-14. Nor do the federal estate tax laws limit commissions to property actually sold. However, the Estate has not provided information of the amount of such corpus, or the basis for its computation of the commissions, the same being reported as “estimated” on its federal estate tax returns. The Estate is directed to provide the computation to Taxation, after which, Taxation is directed to grant the portion it disallowed based on grounds certain real property was not sold.
The Estate’s summary judgment is denied in part and Taxation’s summary judgment motion is granted in part.

*605
FACTS

Decedent, Lillian Garis Booth, died testate on November 22, 2007 at age 92, leaving an estate of approximately $200 million. At the time of her death, and for several years before, decedent was a New Jersey resident, living in Bergen County.
Michael/Misha Dabich (“Dabich”) was decedent’s companion of over 51 years. He also was a New Jersey resident at the time of decedent’s death. Decedent’s 1958 Will and a 1991 Codicil did not make any provision for Dabich.

A. Estate’s Probate Litigation

The Estate instituted probate proceedings with respect to the decedent’s Will and Codicil, seeking court instructions on certain distributions. The suit was filed in the New Jersey Superior Court, Chancery Division, Probate Part.
Dabich then filed a complaint against the Estate in the New Jersey Superior Court, Chancery Division. He alleged that despite his long-term companionship, no provision was made for him under decedent’s Will and Codicil.[1] He asserted that the couple met in New York City when Dabich was 27 and decedent was 42, had been cohabiting ever since, and resided together for 36 years in Alpine, New Jersey until decedent’s death. He alleged that the couple held themselves out as married to society in general and to family members, in New Jersey as well as in Lebanon, Pennsylvania, Dabich’s hometown.
Among other counts, the complaint sought recognition of a common-law marriage between decedent and Dabich under the laws of Pennsylvania and for a share (either elective or entire) in, and of, the decedent’s estate under New Jersey laws. Paragraph 105 of the complaint also asserted that the parties had entered into a settlement agreement on September 23, 2008, which had allegedly provided for, among others, a recognition that Dabich and decedent were common-law husband and wife under the laws *606 of Pennsylvania. To this end, Dabich was going to file a complaint in Pennsylvania to obtain a court declaration of common-law marriage.
On or about December 2, 2008, Dabich filed a “Complaint for Declaratory Judgment of Common-Law Marriage” against the Estate in the Court of Common Pleas, Lebanon County, Pennsylvania. The complaint sought a declaration that the couple had entered into a common-law marriage prior to 2005. The Estate filed an Answer opposing the relief sought, alleging among others, that “Ms. Booth refused to marry Mr. Dabich” but conceding that the couple resided together at the time of decedent’s death.
The September 28, 2008 agreement reflected a settlement between the Estate and Dabich in connection with the Estate’s probate proceedings pending before the New Jersey Superior Court. Some of the “Whereas” clauses recited that (i) Dabich had made claims “of being the surviving spouse of the Decedent” among others; (ii) the Estate had “thoroughly investigated the factual and legal basis” of such claims; (iii) the Estate acknowledged that Dabich and the decedent “cohabited together for approximately 51 years until the decedent’s death” which “thereby creat[ed] a bona fide recognition” of Dabieh’s “monetary and marital” claims; and, (iv) the settlement was entered to avoid costly/acrimonious litigation and “in bona fide recognition of [Dabich’s] monetary and marital claims based upon all facts and circumstances.”
The agreement at paragraph 21 also stated that the Estate had “reviewed” Dabieh’s claims, “investigated the[ir] factual and legal basis,” and “determined that” there were “substantial hazards of litigation” for both parties “on the omitted spouse, elective share, equitable distribution, ... and palimony claims” of Dabich. It continued that upon a “thorough investigation of facts” the parties agreed that Dabich’s claims were “bona fide and substantial,” and that payments to him were to be allocated to his claims for an “elective share of a surviving spouse” under N.J.S.A 3B.-8-1 and “the rights of an omitted spouse” under N.J.S.A. 3B:5-15.
*607 Pursuant to the settlement, the Estate agreed to convey the residence in Alpine in fee simple to Dabieh. It also agreed to create a trust for his benefit (retroactive to decedent’s date of death), fund it with $5 million, pay him the income therefrom for his life. The remainder of the principal was to revert to the Estate upon his death, undiminished by any taxes payable by Dabieh due to the inclusion of the trust in his taxable estate upon his death, or by any dispositions of the trust by Dabieh. The Agreement noted that the trust was intended to be qualified as a Qualified Terminable Interest Property (“QTIP”). If it failed to so qualify, then all amounts paid to Dabieh (real property plus trust monies) would nonetheless deemed to be made in satisfaction of all his claims in the litigation, “marital or otherwise,” and deductible under I.R.C. § 2053 as claims against the Estate.
The parties also agreed that Dabieh would waive all claims against the Estate. These included claims of an “elective share of a surviving spouse” under N.J.S.A 3B:8-1; “the rights of an omitted spouse” under N.J.S.A. 3B:5-15; “or any other claim based on common law marriage to the Decedent;” and “all other legal or equitable rights as a spouse.”
The agreement was contingent upon its approval by the New Jersey Superior Court. It was to be effective as of decedent’s death on November 22,2007.
Sometime thereafter in February of 2009, Dabieh filed a pleading in the New Jersey Superior Court to set aside the settlement agreement. Allegations were focused upon improper attorney conduct due to alleged conflicts of interest.[2]
On March 16, 2009, the Estate and Dabieh entered into an Amended Settlement Agreement (“Amended Agreement”). The document stated that Dabieh had “collaterally attacked” the September 2008 settlement agreement in his lawsuit against the *608 Estate in the New Jersey Superior Court; had filed for declaratory relief in Pennsylvania; and was involved in a fee dispute with his attorneys. The Amended Agreement removed Dabich as co-executor and co-trustee; paid him $1.4 million; paid his attorneys $1.5 million; but retained all other provisions of the September 23, 2008 settlement. The total paid to Dabich was thus $7.9 million (including the $5 million paid into the trust for his benefit). The residence conveyed to him was valued at $2 million per the federal estate tax return. In all, Dabich received $9.9 million.
The first page of the Amended Agreement bears a hand-written notation “Final — ‘So Ordered’ on 03/20/2009.” The last page was signed by Judge Dreier, P.J.A.D. (retired), who was the mediator in the Estate’s probate proceedings in New Jersey. That page also noted “approved and ordered” with the signature of Hon. Ellen Koblitz, P.J.A.D., who presided over Dabieh’s complaint filed in the New Jersey Superior Court.

B. Federal Estate Tax Returns

In February 2009, the Estate filed a federal estate tax return (“Form 706”). It reported decedent as a New Jersey resident and domiciliary, with a gross estate of $197,326,705 and a deduction for state death taxes as $27,646,634. On Schedule K (deductions), the Estate claimed an amount of $4,386,700 towards Dabich’s claims against the Estate. Schedule M (marital deduction) included a line item for “Misha Dabich Trust — Protective QTIP election” as a property interest passing to a surviving spouse, but with a zero dollar value.
The Estate attached a separate statement titled “Protective Claim for Refund.” It noted that if Dabich was successful in setting aside the September 2008 settlement and receiving a common-law marriage declaration from Pennsylvania, he could then become the beneficiary of the entire estate, in which case, the Estate would be entitled to a marital deduction under I.R.C. § 2056. The Estate therefore made a protective claim for refund for $69.55 million, which was the “entire estate tax paid.”
*609 The explanatory statement for the deduction taken as to Dabieh’s claims included information about Dabich’s New Jersey law suit, and noted that the “Estate, recognizing the bona fide nature of Mr. Dabich’s claims but without admitting [their] validity” had entered into the September 2008 settlement agreement giving him the house ($2 million in value) and $5 million in trust ($2,386,000 actuarial value), justifying a deduction of $4,386,700. The statement cross-referenced “Exhibit M” which was the information on marital deduction.
Exhibit M explained the listing of the QTIP on Schedule M. The Estate once again recited the facts of the New Jersey law suit, the September 2008 settlement agreement and the Pennsylvania declaratory action. It noted that “there exists a bona fide issue as to whether the” $5 million trust funds would “be eligible for the ... QTIP election” and that if the Pennsylvania court decided there was a common-law marriage between the decedent and Dabieh, then the Estate would claim all amounts paid to Dabieh (trust amount plus value of residence) as a marital deduction.
By letter of October 2, 2009, the Estate filed a Supplemental Form 706. The letter explained that “a litigation settlement has been reached with the decedent’s surviving common-law spouse,” therefore, payments made to Dabieh were being reported on Schedule M “per Revenue Ruling 76-155.” The letter explained that the settlement was “of a common-law marriage claim under Pennsylvania law which is granted comity under New Jersey law.” Copies of the September 2008 settlement agreement, the Amended Agreement, and a document titled “The Misha Dabieh Trust” (which addressed the $5 million amount) were enclosed. This last document included language that the “Trust is intended to qualify” as a QTIP under I.R.C. § 2056(b)(7) so as to qualify for marital deduction.
The Supplemental Form 706 showed decedent’s marital status as “married,” Dabieh as the “surviving spouse,” and the amount passing to him as $9.9 million. Schedule K (claims against the estate by Dabieh) was reduced and Schedule M (bequests to surviving spouse) was increased from zero to $9.9 million. The *610 deduction for State death tax was claimed as $27,748,390 (compared to $27,646,634 originally reported).
On both the Form 706 and the Supplemental Form 706, the Estate had claimed an amount of $10,874,935 as executors’ commissions. The amount was indicated as “estimated.” On both these returns, the Estate claimed $11,929 as part of the administration expenses, which amount represented maintenance expenses for the Duck Pond property owned by decedent.
By letter of February 10, 2010, the IRS issued an Estate Tax Closing Letter. The letter indicated that the State Death Tax Deduction was $27,765,848. The “adjustments” included an allowance of $9.9 million as “marital deduction” on Schedule M ($5 million passing to the “QTIP Trust;” $2 million value of the residence in Alpine; and $2.9 million as “new cash” ($1.4 million additional cash and $1.5 million towards attorney fees under the Amended Agreement)). The IRS stated that the “marital deduction has been adjusted to reflect the value of the deductible interests passing to the surviving spouse” and that “upon recognition of Misha Dabich as the decedent’s common-law spouse, the payments made to him are shown on Schedule M pursuant to Revenue Ruling 76-155.” The note referenced the September 23, 2008 settlement agreement as well as the Amended Agreement.
The IRS also removed $4,386,700 originally claimed on Schedule K as a deduction for claims against the Estate by Dabich. The IRS noted that “[i]t was determined that Misha Dabich was the decedent’s common-law spouse and payments made to him as a result of litigation and claims filed by ... Dabich are reported on Schedule M ... per Revenue Ruling 76-155.”
The IRS also allowed the “estimated” amount claimed as executors’ commissions in the amount of $10,874,935. Allowance was also provided for the $11,969 maintenance expenses.
The IRS provided a separate computation for the State death tax credit due to New Jersey’s decoupling from the federal estate tax. It used a taxable estate of $176,869,047, which was the gross estate of $202,251,594 less $25,382,547 deductions (including the *611 $9.9 million marital deduction)[3] for a State death tax credit of $27,765,848.

C. New Jersey Death Tax Returns

(i) Inheritance Tax Returns

The Estate filed a resident Inheritance Tax Return (“IT-R”) in July 2008 showing inheritance tax due of $23,228,969, accompanied by two checks for that amount, one for $21,262,969 and another as “compromise tax” for $1,966,000. No amount of the decedent’s estate was reported as passing to a Class “A” beneficiary, ie., a spouse or civil partner.
A month later, it filed an amended IT-R seeking a refund of $1,428,000. The amendment excluded certain assets as not belonging to the decedent at her death, but inclusion of certain income therefrom and some personal property. The amendment did not change the amounts passing to a Class “A” beneficiary, which thus remained zero.

(ii) Estate Tax Returns

The Estate filed a resident Estate tax return (“IT-Estate”) in February 2009. It reflected the same amounts reported on the federal estate tax return, including the deduction for State death taxes. After credit for inheritance taxes already paid (which the Estate reported as $21,800,169), $5,846,465 was due as New Jersey estate tax ($27,646,634 State death tax credit less $21,800,169). Since the Estate had made an estimated estate tax payment of $6 million in 2008, it sought a refund.
The Estate also included a statement titled “Protective Claim for Refund” which was similar to the one filed with the federal estate tax return. The claim sought a refund of some or all of the inheritance and estate taxes paid, depending on the success of Dabich’s claims.

*612
(Hi) Amended Inheritance and Estate Tax Returns

Pursuant to the federal estate tax audit, and the February 2010 closing letter, the Estate filed an amended IT-Estate and a second amended IT-R in March 2010. Among others, it sought a deduction for the $9.9 million paid to Dabich on the IT-Estate and an exemption on the IT-R by listing the amount as passing to a Class “A” transferee. The Estate therefore claimed that it was owed a refund for inheritance tax but owed estate tax, which provided for a net refund of $1,463,121.

(iv) Taxation’s Assessment

In April 2011, Taxation issued a Notice of Assessment based on the amended IT-Estate. It determined the New Jersey estate tax as $9,065,352.52 (exclusive of interest and penalty). After credit for taxes previously paid, Taxation demanded an amount of $438,248.62.
Among others, the Notice denied the $9.9 million marital deduction. Taxation stated that “[t]he common-law marriage claim of ... Dabich is not recognized by” New Jersey, thus, the Estate’s claim for marital deduction was being “disallowed for New Jersey estate tax and inheritance tax” purposes. Taxation stated that it was “not bound by the federal determination to recognize Misha Dabich as a common-law spouse pursuant to the” September 2008 settlement and its 2009 amendment.
Taxation also disallowed a portion of certain expenses, including taxes, accounting fees, executors’ commissions, and administration expenses. Among the administration expenses, $11,929 “to maintain County R[oa]d property” was disallowed under N.J.A.C. 18:26-7.13 and Treas. Reg. § 20.2053-3. It should be noted that the Estate had claimed this amount relative to the Duck Pond property. The parties do not dispute that the disallowed amount pertain to the maintenance expenses claimed for the Duck Pond property.
In July 2011, the Estate filed a timely administrative protest. Simultaneously, it also filed a protective claim for refund for an estimated $1.6 million for both estate and inheritance tax. The Estate maintained that Taxation cannot use the Inheritance Tax *613 laws to disallow estate expenses because the New Jersey estate tax is the federal State death tax credit amount, therefore, expenses allowed by the IRS must be allowed by Taxation. In challenging the disallowed expenses, the Estate maintained that it should be allowed an amount of $10,743,504.70 as executors’ commissions under N.J.A.C. 18:26 — 7.10(d) (an Inheritance Tax regulation). While it challenged certain aspects of the disallowed expenses under the category of “administration,” it did not include the $11,929 or specifically address this disallowance.
The protest resulted in a final determination dated August 28, 2012. Taxation conceded to certain changes but did not agree to a deduction of the $9.9 million paid to Dabich. Taxation noted that there was no evidence of a common-law marriage other than “circumstantial evidence,” and that the IRS’ determination that Dabich was a common-law spouse was similarly not adequately supported. Taxation concluded that it was thus not bound by the IRS’ recognition of the QTIP status to the trust (which election was untimely under federal tax laws per Taxation).
As for the claimed deductions, Taxation allowed some portion due to the July 2011 protest. It also allowed an amount of $10,547,029.70 as executors’ commissions and $315,493 as administration expenses.
Taxation then issued a revised Notice of Assessment dated September 6, 2012 demanding an amount of $485,305.83 (tax, interest and penalty). The Estate paid this amount, but also made a protective claim for refund of the same as it was appealing Taxation’s final determination.
Taxation issued yet another Notice of Assessment dated November 16, 2012. This showed an overpayment by the Estate and a refund due in an amount of $246,610.78.
This complaint followed. The Estate challenged (i) the disallowance of the marital deduction; (ii) valuation of certain real estate owned by decedent; and (iii) calculation of executors’ commissions. The Estate advised that it was not appealing Taxation’s calculations of the New Jersey inheritance tax “assessed against the Estate.” Thus, it did not challenge Taxation’s conclusion that *614 Dabich was not a Class “A” transferee. The Estate (during oral argument) reiterated that there was no dispute with respect to the inheritance tax, and thus, as to Taxation’s determination with respect to the IT-R (original and amended).

FINDINGS

A. Appropriateness of Summary Judgment

Summary judgment will be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(e); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995).
The parties are seeking a resolution of a primary issue in their respective motions for partial summary judgment, namely, whether Taxation can disallow the marital deduction of $9.9 million for New Jersey estate tax purposes when the same was permitted by the IRS. The same grounds are asserted by the Estate as to the disallowed expenses for commissions and maintenance. These are legal issues which are appropriate for summary judgment.

B. Imposition of the New Jersey Estate Tax

The estate tax is levied “[u]pon the transfer of the estate of every resident decedent dying after December 31, 2001 which would have been subject to an estate tax payable” under the Internal Revenue Code (“Code”) “in effect on December 31, 2001.” N.J.S.A. 54:38-1(a)(2). The amount of the tax is the maximum credit for State death tax “that would have been allowable” to the estate under the Code on December 31, 2001, less the amount of State death taxes actually paid to New Jersey with respect to the decedent’s property. N.J.S.A. 54:38-1(a)(2)(a)(i)-(a)(2)(b). Alternatively, the tax is computed based upon a “simplified tax system” but designed to “produce a liability similar to the liability determined” using the maximum federal State death tax credit less actual death taxes paid. N.J.S.A 54:38-1(a)(2)(a)(ii).
*615 The above statute was enacted pursuant to L. 2002, c. 31, § 5 (hereinafter “2002 Amendments”). The primary purpose “was to decouple our estate tax laws from the federal estate tax laws.” Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 568, 940 A.2d 1202 (2008), aff'g, 22 N.J.Tax 55 (Tax 2005); Statement to Senate Bill No. 1378, at 4 (March 25, 2002) (proposed law “preserves the New Jersey estate tax as it existed up to the point at which the changes in federal law took effect by providing that the tax would be computed as though the terms of the federal estate tax, including those governing liability for that tax and allowance of the state legacy tax credit, continued to apply to the estates of resident decedents dying after December 31, 2001 as they did to that of a resident decedent dying on that date”).

C. The Federal Estate Tax Laws on Marital Deduction as of December 31, 2001

The general scheme of calculating the federal estate tax is set forth in Treas. Reg. § 20.0 — 2(b)(2)-(b)(5), which is as follows:
(2) ascertain the total value of the gross estate (by including all property owned by decedent at time of death);
(3) ascertain the value of the taxable estate (“by subtracting from the value of the gross estate the authorized exemptions and deductions” which “deductions are allowable for expenses, indebtedness, taxes, losses, charitable transfers, and transfers to a surviving spouse”);
(4) compute the “gross estate tax” (by applying tax rates under I.R.C. § 2001, to the taxable estate); and,
(5) compute the “net estate tax payable” (“by subtracting from the gross estate tax the authorized credits against tax” which include, credit under I.R.C. § 2011 for “State death taxes paid”).
Under the above scheme (pre-2005), a determination of the taxable estate precedes the computation of the federal credit for State death taxes. This means that the marital deduction is provided first, and thereafter, the credit for State death taxes is calculated.
The Code allows a marital deduction from gross estate for “an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse” when such “interest is included in” the gross estate. I.R.C. § 2056. The burden is upon the executor of an estate to prove facts *616 establishing that “[t]he decedent was survived by a spouse” and “[t]he property interest passed from the decedent to the spouse.” Treas. Reg. § 20.2056(a)-1(b)(i)-(b)(ii).
Interest is deemed to have “passed” to a surviving spouse if it is a “dower or curtesy interest (or statutory interest in lieu thereof).” Treas. Reg. § 20.2056(c)-1(a)(3). Further,
[i]f as a result of the controversy involving the decedent’s will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having ‘passed from the decedent to his surviving spouse’ only if the assignment or surrender [is] a bona fide recognition of enforceable rights of the surviving spouse in the decedent’s estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interest depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse.
[Treas. Reg. § 20.2056(c)-2(d)(2) ]
As of December 31, 2001, the federal estate laws provided for an unlimited marital deduction.[4] As of that date, the IRS was required to apply State law in deciding whether there was a legally recognized marital relationship between the decedent and the person claiming such relationship. Thus, in Rev. Rul. 58-66, 1958-1 C.B. 60[5] the IRS dealt with marital status for federal income tax purposes. It stated that the “marital status of individuals as determined under state law is recognized in the administration of the Federal income tax laws.” Therefore, if applicable “state law recognizes common-law marriages, the status of individ *617 uals living in such relationship ... is, for Federal income tax purposes, that of husband and wife.”
In Rev. Rul. 76-155, 1976-1 C.B. 286, the IRS addressed the marital relationship in the context of the federal marital deduction. It held that neither the Code nor the federal regulations defined the term “surviving spouse.” Federal legislative history of the marital deduction did “not indicate that the term was to have a special meaning for purposes of the marital deduction,” therefore, it should be accorded its “usual meaning.” Ibid, (citing to S.Rep. No. 1013, 80th Cong., 2d Sess., Part 2, reprinted in 1948-1 C.B. 285). The “normal usage” of “surviving spouse denotes a legal status that arises from the termination of a lawful marital union by the death of the other mate” thus, a claimant must “independently establish ]” the “legal status of’ the spousal relationship “on the basis of the best evidence available.” Ibid. The IRS stated that marital deduction, being of legislative grace, should not be “loosely applied.” Ibid. Therefore “the term ‘surviving spouse’ [cannot] ... include an alleged or claimed spouse.” Ibid.
The IRS’ practice and policy in this regard is consistent. See, e.g., I.R.S. Priv. Ltr. Rul. 200132004 (Apr. 25, 2001) (“surviving spouse” for purposes of the marital deduction, and as interpreted in Rev. Rul. 76-155 “refers to the same person who is the surviving spouse under the law of the state in which the decedent’s estate is being administered”) (citations omitted). Even the latest IRS’ ruling defines a “common-law marriage” as “a union of two people created by agreement followed by cohabitation that is legally recognized by a state.” See Rev. Rul. 2013-17, 2013-38 I.R.B. 201.[6] The IRS noted that Rev. Rul. 58-66 was “applied” to “common-law marriages for over 50 years, despite the refusal of some states to give full faith and credit to common-law marriages established in other states” since “uniform nationwide rules are essential for efficient and fair tax administration.” Ibid.
*618 Additionally, payments “pursuant to a settlement agreement” will be deemed as a “bona fide recognition of enforceable rights of the surviving spouse in the decedent’s estate only if the settlement is based on an enforceable right under state law properly interpreted.” I.R.S. Priv. Ltr. Rul. 200132004, supra, (citing Estate of Mergott v. United States, 2000 U.S. Dist. LEXIS 12408, 2000 WL 1358722 (D.N.J. August 10, 2000)). In this regard, “where a substantive rule is based on state law, the state’s highest court is the best authority on its own law.” I.R.S. Priv. Ltr. Rul. 200132004, supra. In the absence of any “decision by the state’s highest court, [the] federal authorities must apply what they find to be the state law after giving ‘proper regard’ to relevant rulings of other courts of the state.” Ibid.

D. Is Taxation Bound by the IRS’ Determination of a Marital Deduction Allowance

Prior to the 2002 Amendments, the New Jersey estate tax was “intended only to ‘soak up’ the unused federal credit for which an estate receives a corresponding federal estate tax reduction,” thus, New Jersey’s revenue was “solely at the expense of the federal government” and a “taxpayer ... pays no additional tax.” Forbes v. Director, Div. of Taxation, 14 N.J.Tax 257, 263 (Tax 1994). Thus, there was no legislative or statutory “intent to impose an estate tax in excess of the federal credit.” Id. at 264. Since the Legislature intended “to limit the New Jersey estate tax to the amount of the federal credit” it was reasonable to conclude that “by implication” the Legislature also intended to “include the terms governing the calculation of the federal credit” and “incorporate ... the provisions of the federal estate tax including exemptions and deductions____” Id. at 264, 266[7] (citing to N.J.S.A 54:38-13). The New Jersey estate tax was thus “imposed only on estates subject to the federal estate tax” and “was *619 integrated with the federal estate tax.” Stevenson v. Director, Div. of Taxation, 23 N. J.Tax 583, 590 (Tax 2008).
As noted above, pursuant to the 2002 Amendments, the New Jersey estate tax was decoupled from the federal estate tax and ceased merely to be a sponge tax. Tax is now imposed on the estate of “any resident dying after December 31, 2001.” Stevenson, supra, 23 N. J.Tax at 585 n. 3, 590-91.
The Estate argues that the decoupling did not allow Taxation to re-determine the IRS’ computation of the marital deduction in the process of determining the State death tax credit. A similar argument was made in challenging Taxation’s use of the federal estate tax payable as of December 31, 2001 as a deduction in computing the residuary estate passing to the surviving spouse which was the marital deduction amount, as follows:
[i]n adopting, by reference, the federal credit for state death taxes, New Jersey adopted the whole bundle of federal law — except to the extent it explicitly declared to the contrary. Once again, the statute and the legislative history are devoid of any declared intention to rewrite definitions of “gross estate,” or the allowable deductions, in particular the marital deduction____ Once these items are determined, the credit for state death taxes is a function of them. It is a result of the gross estate and the marital deduction, not the other way around as the Division argues.
[Id. at 587]
The court rejected these arguments. It held that
the New Jersey Legislature made it quite clear that it was “decoupling” from the federal estate tax law. The New Jersey estate tax was no longer a “pick-up” tax tied to the federal estate tax. Moreover, the Legislature explicitly repealed N.J.S.A. 54:38-8, which would have eliminated the New Jersey estate tax in the event that the federal estate tax was repealed or if the federal credit for state death taxes was eliminated. Contrary to plaintiffs contentions, then, the New Jersey Legislature clearly indicated that the New Jersey estate tax was no longer a pick-up tax and was imposed independently of the federal estate tax and of the federal credit for state death taxes.
[Id. at 591]
The court then affirmed Taxation’s assessment which was based upon a re-determination of the marital deduction amount. Ibid.
It is clear that the 2002 Amendments decoupling the New Jersey estate tax from the federal estate tax was intended to protect New Jersey from loss of federal revenue (received via the death tax credit). The revenue loss due to the increased unified *620 credit (I.R.C. § 2010) and the phase-out of the State death tax credit (I.R.C. § 2011) would now be shifted to, and recoverable from the decedent’s estate. To this extent then, the legislative intent interpreted in Forbes, supra, namely, that the State’s revenue was solely at the expense of the federal government, and the taxpayer cannot be made to pay any tax in excess of the allowable federal credit, is inapplicable.
However, Stevenson, supra, also held that the 2002 Amendments did “not purport to change federal estate tax laws, but simply ... assessed] a New Jersey estate tax based upon a calculation of federal estate tax as it was in effect on December 31, 2001.” Id. at 591. Thus, they froze or locked in the computation of the New Jersey estate tax to the maximum amount of the allowable federal death tax credit as of December 31, 2001. As noted in Oberhand, supra, the decoupling allowed New Jersey to maintain the computation of its estate tax based on the federal laws as of December 31, 2001. In this regard, it quoted with approval, the Tax Court’s holding that
the Committee Statements provide that the [2002] Amendments were intended to result in computation of New Jersey estate tax as though the terms of the federal estate tax, including those governing liability for that tax and allowance of the state legacy tax credit, continued to apply to the estate of resident decedents dying after December 31, 2001 as they did to that of a resident decedent dying on that date. This language indicates that under the Amendments, the Director’s responsibility is simply to determine estate distributions under the law in effect on the date of death and apply to those distributions the federal estate tax law in effect on December 31, 2001.
[193 N.J. at 569, 940 A.2d 1202]
See also Estate of Kosakowski v. Director, Div. of Taxation, 427 N.J.Super. 147, 149, 47 A.3d 760 (App.Div.2012) (the 2002 Amendments provided “that State [estate] taxes would be computed in accordance with the federal state tax credit in effect on December 31, 2001, which was $675,000”), appeal dismissed, 212 N.J. 460, 56 A.3d 395 (2012) (Dkt. No. A-25 Sep. term 2012, 07319). Cf. McGinley v. Madigan, 366 Ill.App.3d 974, 303 Ill.Dec. 522, 851 At A.2d 709, 720-21 (2006) (holding that decoupling the Illinois estate tax from the federal death tax credit “did not create a new tax” since the estate tax always existed, “[i]nstead” the decoupling “set a new tax rate that was unrelated to the contemporaneous *621 federal estate tax rate”), appeal denied, 222 Ill.2d 575, 308 Ill.Dec. 325, 861 N.E.2d 656 (2006).
It should be noted that the 2002 Amendments did not change or repeal N.J.S.A. 54:38-13, which is titled “Purpose of chapter; liberal construction” and provides that the New Jersey estate tax is intended “to obtain for this state the benefit of the credit allowed under the provisions of’ I.R.C. § 2011(b). The 2002 Amendments did not enact new provisions as to what comprises the gross estate, or how the taxable estate is to be determined.
Thus, although New Jersey decoupled from the federal estate tax laws to protect revenues, it still retains its dependence upon, and calculation of, the federal credit for State death taxes as the method of assessing New Jersey estate tax. See also Charles D. Fox IV & Adam M. Damerow, The ACTEC State Death Tax Chart — Still Going Strong After Seven Years, 35 Am. College of Trust & Estate Counsel 53, 64-65 (Summer 2009) (listing New Jersey’s 2002 Amendments as a “pick-up tax frozen at federal state death tax credit in effect on December 31, 2001” under the column titled “Effect of EGTRRA on Pick-up Tax and Size of Gross Estate”).
Nonetheless, the court is not persuaded by the Estate’s argument that the decoupling and New Jersey estate tax statute’s scheme relegates Taxation’s role in assessing the New Jersey estate tax to a mechanical exercise of mathematical verification of the State death tax credit. The Stevenson court’s affirmance of Taxation’s determination which included an examination of the amounts claimed as a marital deduction supports this conclusion. Stevenson, supra, 23 N.J.Tax at 588-89. Thus, although a decoupled, but frozen pick-up tax, Taxation can still examine federal allowances to ensure that the same are in accordance with the federal estate laws as of December 31, 2001.
The above conclusion is especially applicable to this case. Although it is the federal estate tax law which provides for a marital deduction, it is State law that determines whether an individual is a spouse for purposes of application and allowance of that marital deduction. See Windsor, supra, at 2691 (observing *622 that the “regulation of domestic relations” is “an area that has long been regarded as a virtually exclusive province of the States ... [and] [consistent with this allocation of authority, the Federal Government, through our history, has deferred to state-law policy decisions with respect to domestic relations”) (citations and quotations omitted).
Our Legislature prohibited common-law marriages. See N.J.S.A. 37:1-10 (declaring void any common-law marriage contracted after December 1, 1939). However, a common-law marriage of another State that legally recognizes such a marital union will also be recognized by New Jersey. See Winn v. Wiggins, 47 N.J.Super. 215, 220, 135 A.2d 673 (App.Div.1957) (since New Jersey does not recognize common-law marriages, the claimant/s must prove that “the common-law marriage was recognized under the laws of the state where it occurred”). Nonetheless, “strong public policy evinced by the enactment of ... N.J.S.A. 37:1-10, is best effectuated by declaring that persons domiciled in New Jersey cannot leave this State, enter into a common-law marriage in a state where such marriages are allowed, and then return home and ask our courts to recognize that marriage.” Id. at 224, 135 A.2d 673. See also Metropolitan Life Ins. Co. v. Chase, 294 F.2d 500, 505 (3d Cir.1961) (the holding in Winn, supra, that courts need not recognize a post-New Jersey domiciled common-law marriage of another State, was “technically obiter dictum,” yet “adequate evidence that the courts of New Jersey ... would apply the law of the domicile of the parties at the time their alleged common law marriage took place ... to determine the validity of that marriage”).
Thus, here, where the computation of the federal State death tax credit implicates a question of State law as to the common-law marital status of a claimant, Taxation should not be irrevocably bound by the IRS’ allowance of a marital deduction if that allowance is not in accordance with New Jersey law as to common-law marriages in the absence of a court’s finding or recognition of such a status. It would be anomalous to conclude that a federal agency must apply State laws, but that State cannot *623 disagree with the federal agency’s interpretation and application of those laws. While it is administratively efficient for the federal and New Jersey estate tax laws to be read as one such that a computation of the State death tax credit by one is the same for the other, the exercise cannot sanction what our Legislature chose to ban. See, e.g., Pledger v. Worthen Bank & Trust Co., 319 Ark. 155, 889 S.W.2d 732 (1994) (since construction of Wills is a matter of State law, courts not bound by the federal decision to disallow a marital deduction even if the State’s estate tax is based upon a computation of the federal State tax credit).
A contrary interpretation would render redundant the language in N.J.S.A. 54:38-13 which grants Taxation “all additional, implied and incidental powers ... proper and necessary to effect and carry out the expressed intent and purpose” of the estate tax laws, which is to maximize the available federal tax credit for the benefit of New Jersey, and thus, must be construed and interpreted “liberally.” It would also negate the vitality of the oft-quoted and established deference given by courts to Taxation in the interpretation and administration of tax laws because of its “expertise in the highly specialized and technical area of taxation.” See Estate of Ehringer v. Director, Div. of Taxation, 24 N.J.Tax 599, 610 (Tax 2009) (citations and quotations omitted), aff'd, 412 N.J.Super. 316, 990 A.2d 678 (App.Div.2010).
The holding in Forbes that the Legislature implicitly intended to “include the terms governing the calculation of the federal credit” and “incorporate ... the provisions of the federal estate tax including exemptions and deductions” does not require a different conclusion here. Forbes, supra, 14 N.J.Tax at 264, 266. That holding was premised upon the New Jersey estate tax being a pure pick-up or sponge tax with no ability to obtain a tax greater than the federal State death tax credit. Id. at 263. That premise does not apply after the 2002 Amendments. Moreover, Forbes is factually dissimilar in that it involved a federal provision (interest deduction) which was not tied to State common-law, the predominant issue in this matter. Cf. Pledger, supra, 889 S.W.2d at 739 (Dudley, J., dissenting) (disagreeing with the majority’s interpretation of the decedent’s Will and codicils as creating a QTIP and *624 holding that the federal estate tax law controls in this regard because the State’s estate tax was based on the federal State death tax credit, but noting that the ease did “not involve a common law subject, and it does not involve this court’s determination of what the common law should be”).
The Estate argues that Taxation’s regulations evidence that the New Jersey estate tax has no independence in terms of federal estate tax law provisions. It points out that Taxation requires an estate must make the same “election” for federal and New Jersey estate tax purposes, and further that “assets and deductions must be treated in the same manner for both.” See N.J.A.C. 18:26-3A.8(d). Therefore, it contends, Taxation must be bound by the marital deduction as it was “treated” by the IRS, which here was an allowance of $9.9 million.
The court does not read the term “treated” in the regulation as “treated by the IRS.” When the above cited regulation was proposed, Taxation stated that it “set forth [its] position that elections made for Federal purposes must also be made for New Jersey purposes and bring the New Jersey filing requirement into line with the requirement of the Internal Revenue Service.” See 27 N.J.R. 1694(a) (May 16, 2005). When adopted, Taxation noted that the regulation was “intended narrowly to address only situations where the Federal proceeding provided for an election.” 38 N.J.R. 2518(b) (June 5, 2006). In any event, the regulation cannot exceed State law or the federal estate tax law as it existed December 31, 2001.[8] Therefore, it cannot be construed as requiring Taxation to agree that a person is a common-law spouse under New Jersey law because the decedent’s estate was allowed a federal marital deduction by the IRS for property paid by the Estate to that person under a settlement or consent agreement.
*625 The Estate points out that the New Jersey Legislature did not express any intent to diverge from the federal estate tax scheme except for civil union couples (citing to N.J.A.C. 18:3A-8(e)). The Estate argues that with this exception, Taxation is required to “strict[ly] appl[y]” the federal estate tax laws in effect December 31, 2001.
N.J.A.C. 18:3A-8(e) allows a marital deduction for a surviving civil union partner “equal to that permitted a surviving spouse under the” Code “in effect December 31, 2001 ... for New Jersey estate tax purposes.” This benefit was available for deaths occurring on or after February 19, 2007. The regulation was implemented because our Legislature enacted the Civil Union Act (L. 2006, c. 103) effective February 19, 2007, pursuant to which “legal benefits ... of spouses shall apply in like manner to civil union couples” with respect to “laws relating to taxes imposed by the State ... including but not limited to ... tax deductions based on marital status----” Section 92 of that law also provided that “[wjhenever in any law, rule, regulation, judicial or administrative proceeding or otherwise, reference is made to ‘marriage/ ‘husband/ “wife/ ‘spouse/ ... “widow/ ‘widower/ ‘widowed’ or another word which in a specific context denotes a marital or spousal relationship, the same shall include a civil union pursuant to the provisions of this act.” Taxation therefore amended both the inheritance and estate tax regulations “in compliance” with this law. See 39 N.J.R. 5185(a) (Dec. 17, 2007).[9]
*626 While the above regulation evidences express legislative intent to extend any tax benefits to a civil union couple, it does not take away from the fact that New Jersey still does not recognize common-law marriages. Indeed, because common-law marriages are void in New Jersey, Taxation’s regulations could not possibly include persons in such union/relationship as entitled to a marital deduction. Taxation’s inclusion of a civil union couple in its estate tax laws, enacted to comply with New Jersey statutory requirements, does not lend to a conclusion that it is bound by the IRS’ allowance of a marital deduction in a case involving an alleged common-law marriage.
In sum, the court finds that in the absence of a court’s finding or recognition of a common-law marriage, Taxation is not foreclosed from re-computing the State death tax credit because it disagrees with the federally allowed marital deduction which was provided on the basis of an alleged common-law marriage of a New Jersey resident decedent. Although the New Jersey estate tax retains characteristics of a frozen pick-up tax, there is no legislative intent or precedent, pre- or post-2002 Amendments, evidencing a transfer or delegation of the State’s powers to regulate the area of marriage to the IRS so that the IRS could declare or recognize, as a matter of law, whether a claimant is a common-law married spouse in New Jersey. To the extent the IRS’ conclusion in this regard is based upon the finding of a common-law marriage by a New Jersey court or other court, Taxation is equally bound by such a finding since it is premised upon a court’s conclusion of a common-law marriage on the merits (thus facts) of the matter. To the extent the IRS’ finding is not so based, Taxation is not automatically bound if the finding is not in accord with New Jersey laws or other State/s laws which recognized such a union before the individuals became New Jersey domieiliaries.
*627 E. Did the IRS’ Finding Conform to New Jersey law on Common-law Marriages ?
The Estate agrees that the IRS must apply State law to decide whether the marital deduction amount should be allowed as claimed. Both parties agree that New Jersey will recognize a valid common-law marriage of a State which recognizes this form of marital union. Here, Pennsylvania recognizes such a union.[10] Taxation argues, and the Estate disagrees, that here, there was no common-law marriage recognized by the Pennsylvania courts, and further, the marriage if any, must have been contracted before the parties became residents of New Jersey, whereas here, the decedent was always a New Jersey resident.
In the instant matter, the IRS, in its 2010 closing letter concluded that “upon recognition of’ Dabich as the “common-law spouse” and because “[i]t was determined that Misha Dabich was the decedent’s common-law spouse,” the payments made to him “as a result of litigation and claims filed by ... Dabich” were eligible for marital deduction “pursuant to Revenue Ruling 76-155.” The IRS referenced only the September 2008 settlement agreement and its 2009 Amended Agreement in this connection.
There is nothing in the settlement agreement (or the Amended Agreement) indicating that New Jersey declared or found a common-law marriage between the decedent and Dabich. That the Amended Agreement was signed as “approved and ordered” by a Superior Court judge does not lend to a conclusion that the court determined, on the merits with relevant factual findings, that a common-law marriage existed between the decedent and Dabich. Although the 2008 agreement noted that the payments made to Dabich were to be allocated to his claims for his “elective share of a surviving spouse” under N.J.S.A. 3B:8-1, and “the rights of an omitted spouse” under N.J.S.A. 3B:5-15, it does not equate to a finding by the New Jersey Superior Court that Dabich *628 was a spouse under either or both of those statutes. This court has no documents as to the disposition of the Pennsylvania lawsuit wherein Dabich sought a declaratory ruling on his alleged common-law marriage with the decedent (which was presumably withdrawn or dismissed pursuant to the settlement filed in New Jersey).
The Estate’s recognition of Dabich’s claims as bona fide is not tantamount to a concession or even a legal determination that the decedent and Dabich were married. Both parties recognized that there were hazards to litigating Dabich’s claims. Indeed, the Estate in its pleadings denied that the decedent was married to Dabich. Even in its Form 706 filed after the September 2008 agreement, the Estate noted that it only recognized the “bona fide nature” of Dabich’s claims but did not “admit” to their “validity.” This lack of concession was also reflected in the provision in the settlement agreement that if the $5 million trust failed to qualify as a QTIP, then the entire $9.9 million payment to Dabich would be deemed deductible as claims against the Estate under I.R.C. § 2053.
As noted above, the IRS will not “necessarily ... accept[ ]” a transfer of the decedent’s property to an alleged spouse, as a “bona fide evaluation of the rights of the spouse” if such a transfer was pursuant to an agreement or consent not to contest the will. Treas. Reg. § 20.2056(c)-2(d)(2). The allegations in Dabieh’s complaint or the Estate’s agreement that the claims are bona fide would likely not constitute the basis for a conclusion of a common-law spousal status. See Rev. Rul. 76-155, supra (“A compromise payment, even though made as a bona fide, arms-length settlement of an alleged ... claim for dower, does not in and of itself establish a marital relationship”). However, unlike the lengthy examination of state laws in the I.R.S. Priv. Ltr. Rul. 200132004, supra, here, the IRS’ closing letter did not even allude to either New Jersey or Pennsylvania laws in support of its conclusion that Dabich was a common-law spouse.
Therefore, the court finds that the IRS’ “determination” that Dabich was the common-law spouse of the decedent, is not persua *629 sive because there is no analysis or application of New Jersey law which does not recognize this union, and does not recognize it if the New Jersey domiciliaries were not so united before they became New Jersey domiciliaries. Nor does the IRS’ “determination” that Dabich is a common-law spouse contain any analysis of Pennsylvania laws. Thus, the IRS’ determination is not binding upon Taxation. Since there is no dispute that the decedent and Dabich were New Jersey residents at the time of the decedent’s death, Taxation did not err in disregarding the federally provided marital deduction.
F. Did Taxation Err in Disallowing A Portion of the Executors’ Commissions?[11]
The Estate contends that Taxation improperly disallowed executors’ commissions in the amount of $327,905.30 because it applied the Inheritance Tax regulation to determine the amount. Similar to its arguments as to the marital deduction, the Estate contends that Taxation must simply follow the IRS’ lead in this regard.
I.R.C. § 2053, titled “Expenses, indebtedness, and taxes” allows certain deductions from the gross estate for, among others, administration expenses. The statute provides this deduction to the extent the expenses “are allowable by the laws of the jurisdiction, ... under which the estate is being administered.” Ibid. See also Treas. Reg.§ 20.2053-3(b)(1).
*630 As effective for deaths prior to 2009, Treas. Reg. § 20.2053-3 allows a deduction of executor’s commissions if (i) the IRS was “reasonably satisfied” that the claimed commissions “would be paid;” (ii) the claimed amount was “within the amount allowable by the laws of the jurisdiction in which the estate is being administered;” and (iii) the amount is “in accordance with the usually accepted practice in the jurisdiction to allow such an amount in estates of similar size and character.”[12]
N.J.A.C. 18:26-7.10(a) (the Inheritance Tax regulation) provides that executor commissions are, “in the absence of a judgment of the court exercising jurisdiction over the probate of an estate,” to be “determined under N.J.S.A 3B:18-14.” The latter statute allows commissions on “all corpus received by a fiduciary” at certain statutorily set rates.[13]
Taxation argues that since the above regulation is in accord with the federal estate tax regulation, Treas. Reg. § 20.2053-3, in that it incorporates State law governing the executor’s commissions, its computation is correct.
The Estate claims its computation is correct because it followed the rates under N.J.S.A. 3B: 18-14, which was accepted and allowed by the IRS. It notes that Taxation disallowed a portion because under the Inheritance Tax regulation commissions on real estate are allowed only upon real property that was “actually sold” or “which is expressly directed to be sold by the terms of the decedent’s will.” N.J.A.C. 18:26-7.10(d).
*631 N.J.S.A. 3B:18-14 allows a commission on “all corpus received by a fiduciary.” Thus, it does not limit commissions upon real property only if the same is sold. Additionally, the federal estate tax regulations explain that “[t]he phrase ‘allowable by the law of the jurisdiction’ means allowable by the law governing the administration of decedents’ estates. The phrase has no reference to amounts allowable as deductions under a law which imposes a State death tax.” Treas. Reg. § 20.2053-1(a)(1). Consequently, for estate tax purposes, it appears clear that pursuant N.J.S.A. 3B:18-14, which is followed by the IRS, the commissions are allowed based upon the corpus received by the fiduciary.
Here, Taxation computed the corpus as being the gross estate based on the Estate’s amended returns (Schedule B) which was $193,730,594. To this, it added the value of real property sold by the Estate ($1,850,000) for a total of $195,580,594. It then applied the statutory rates of N.J.S.A. 13:18-14, plus the commissions paid to Dabieh.
Although the Estate claims that Taxation improperly excluded certain real estate, it has not provided any information in this regard. The Estate has no breakdown for its computation of the claimed commissions. The amount claimed on the Form 706 was noted as “estimated.” Therefore, the court directs the Estate to provide its computation of the claimed commissions, which will indicate the corpus used, after which Taxation is directed to allow the same.[14]

CONCLUSION

For the aforementioned reasons, Taxation’s motion for summary judgment is granted in part. An Order and Judgment in accordance with this opinion will be issued.

 Dabich was one of the co-executors of the decedent’s Will and Codicil.

 Dabieh had filed an Order to Show Cause in both the pending matters in the New Jersey Superior Court (Estate’s probate proceedings in the Probate Part and Dabich's complaint in the Chancery Division) to set aside the attorneys’ contingency fee agreement.

 The adjustments resulted in an assessment of about $261,000 in additional federal estate tax (thus, did not result in a refund of the entire estate tax paid of $65.91 million).

 The Economic Recovery Tax Act of 1981, Pub.L. No. 97-34, 95 Stat. 172 (1981) amended I.R.C. § 2056 to provide for an unlimited marital deduction. The statute remained unchanged as of December 31, 2011.

 Although they cannot be cited as precedent, the IRS’ "interpretive rulings ... and practices" are given "considerable weight where they involve the contemporaneous construction of a statute and where they have been in long use.” United States v. Wisconsin Power & Light Co., 38 F.3d 329, 334-36 (7th Cir. 1994) (citations omitted).

 This ruling was in response to the Supreme Court’s decision in United States v. Windsor, — U.S. -, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013), which reversed the IRS’ denial of marital deduction because the surviving claimant was a same sex partner of the decedent.

 The court concluded the taxpayer's federal election to pay the federal estate tax in installments (which triggered a protective refund claim for New Jersey estate tax by the taxpayer because interest on installments was deductible under I.R.C. § 2053, thus, reduced the State death tax credit), cannot be disregarded by Taxation. Forbes, supra, 14 N.J.Tax at 266.

 Indeed, the same regulation was proposed to be amended in 2008 to except QTIP elections from the requirement of one election for federal and state estate tax purposes but was quickly deleted based upon public comments. See 40 N.J.R. 1923(b) (April 7, 2008) (adding exceptions numbered (d)(1) and (d)(2)); 40 N.J.R. 4342(a) (July 21.2008) (deleting (d)(1) and (d)(2)).

 In Rev. Rul. 2013-17, supra, the IRS concluded that "[f]or Federal tax purposes, the terms 'spouse,' 'husband and wife,’ 'husband,' and 'wife' do not include individuals (whether of the opposite or same sex) who have entered into a registered domestic partnership, civil union, or other similar formal relationship recognized under state law that is not denominated as a marriage under the laws of that state....” This conclusion would not, however, permit Taxation to ignore our Legislature's express intent to provide such tax benefit to a New Jersey civil union relationship. Additionally, New Jersey now allows same sex marriages in the wake of Windsor, supra. See Garden State Equal, v. Dow, 216 N.J. 314, 79 A.3d 1036 (2013) (denying stay of the trial court’s decision that same sex marriages must be allowed by New Jersey). The IRS' disallowance of a marital deduction for a domestic partnership may apply to New Jersey because the State does not recognize domestic partnerships due to the enactment of the 2007 Civil Union laws. See N.J.S.A. 26:8A-4.1. Pre-existing domestic partner *626 ships or such unions for persons aged 62 or more are recognized by New Jersey. Ibid. Nonetheless, the law restricted tax benefits for this type of union to an "exemption from the personal income tax and the transfer inheritance tax on the same basis as a spouse.” N.J.S.A. 26:8A-2. Thus, there is no federal-state estate tax conflict.

 Pennsylvania does not recognize as valid, common-law marriages "contracted after January 1, 2005.” 23 Pa.C.S. § 1103. However, the statute is prospective, thus "any common-law marriage otherwise lawful and contracted on or before January 1, 2005” is not considered to be "invalid.” Ibid.

 The Estate had also contested the disallowance of $11,959, a portion of the claimed miscellaneous administration expenses, allocable to the maintenance of the Duck Pond property owned by the decedent. Taxation argued that the Estate had not included this issue in its July 2011 protest, thus, it was out of time to challenge the disallowance. However, it conceded that had this item been included in that protest, Taxation would have allowed it. Pursuant to a telephonic hearing held on January 17, 2014, Taxation agreed to allow the Duck Pond maintenance expenses solely for purposes of settlement in connection with the partial summary judgment motions. Both parties agreed that this concession is without prejudice to their respective positions/defenses/assertions with respect to the Estate’s claim for counsel fees, alleged in its complaint and listed in its form of Order submitted with its instant partial summary judgment motion but not briefed.

 The regulation effective for deaths after 2009 also requires that the commissions be in accordance with the "usually accepted standards and practice of allowing such an amount in estates of similar size and character in the jurisdiction in which the estate is being administered____” If the claimed amount is a “deviation from the usually accepted standards or range of amounts (permissible under applicable local law)," the same “must be justified to the satisfaction of the" IRS. Treas. Reg. § 20.2053-3(b)(1).

 The statute sets the at 5% on the first $200,000; 3.5% on the excess over $200,000 up to $1 million; 2% on the excess over $1 million; and 1% of all corpus for each additional fiduciary.

 In its July 2011 protest, the Estate computed the executors’ commissions based upon a gross estate of $199,510,094 claiming that the values of certain real estate were much lower than originally reported. Using this as the basis, it calculated the executors’ commissions at an amount lower than claimed on the Form 706. During oral argument, the Estate maintained that these computations were addressing only the inheritance tax, thus, are irrelevant for addressing their deductibility under the estate tax.